## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WIRTGEN AMERICA, INC., <br> a Tennessee Corporation, <br> 6030 Dana Way <br> Antioch, TN 37013-3116, <br><br>         Plaintiff, <br><br>        v. <br><br> UNITED STATES OF AMERICA, <br><br> DEPARTMENT OF HOMELAND SECURITY, <br> 245 Murray Lane, S.W. <br> Washington, D.C. 20528, <br><br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 1300 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20229, <br><br> CHAD F. WOLF, <br> DEPARTMENT OF HOMELAND SECURITY, <br> 245 Murray Lane, S.W. <br> Washington, D.C. 20528, <br><br> MARK A. MORGAN, <br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 1300 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20229, <br><br> JUAN J. PORRAS, <br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 109 Shiloh Dr. Suite 300 <br> Laredo, TX 78045, <br><br> CHARLES STEUART, <br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 90 K Street, N.E. <br> Washington, D.C. 20229, <br><br>        Defendants. | Case No. _____ <br><br> **COMPLAINT FOR** <br> **DECLARATORY, INJUNCTIVE,** <br> **AND OTHER RELIEF** |

1.      Without explanation, jurisdiction, or justification, Customs has determined that it has the authority to issue an order barring importation of certain Wirtgen machines that are not the subject matter of any such order or decision by the U.S. International Trade Commission.

2.      As will be demonstrated in this complaint, the key decision-makers, Mr. Porras and Mr. Steuart, are not validly appointed.

3.      Plaintiff Wirtgen America, Inc. ("Wirtgen"), therefore, brings this Complaint against the following Defendants: the United States of America; the Department of Homeland Security; the Honorable Chad F. Wolf in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. Customs and Border Protection ("Customs"); the Honorable Mark A. Morgan in his official capacity as Acting Commissioner of Customs; Juan J. Porras in his official capacity as Director of Machinery Center of Excellence and Expertise of Customs; and Charles Steuart in his official capacity as Chief of the Intellectual Property Rights and Restricted Merchandise Branch ("IPR Branch"), Office of International Trade, of Customs.

4.      This lawsuit seeks to enjoin Defendants from unlawfully detaining certain models of Wirtgen's road-milling machinery, thereby excluding Wirtgen's machinery from being imported into the United States.

5.      Road milling machines are large construction machines that grind the top layer of old pavement from a road to prepare for a new layer of pavement to be applied.

6.      Wirtgen is the leading provider of milling machines in the United States.

7.      When Wirtgen is unable to import its machines, Wirtgen's customers, reputation, business relationships, and market share, as well as America's roadways, are harmed.

8.      Wirtgen's machines are being detained at various ports of entry. Some of the detained machines were later released, but others have been permanently excluded from entry. And Customs has threatened to seize future Wirtgen machines.

9.      The excluded Wirtgen machines have already been purchased by customers.

10.      Those same excluded machines represent millions of dollars in value.

11.      Defendants are detaining and excluding Wirtgen's machines purportedly pursuant to a Limited Exclusion Order ("LEO") issued by the U.S. International Trade Commission ("Commission") following a patent infringement investigation, Investigation No. 337-TA-1088 ("the 1088 Investigation").

12.      That 1088 Investigation was expressly limited to certain models of machines having certain features.

13.      The excluded machines were not adjudicated in the 1088 Investigation and have a design that differs from the machines adjudicated in the 1088 Investigation.

14.      These redesigned machines omit the features accused of infringement in the 1088 Investigation.

15.      The Commission's written decision expressly excluded such redesigned machines from the scope of the 1088 Investigation.

16.      Customs has no basis or authority to block entry of these products.

**<u>NATURE OF THIS ACTION</u>**

17.      Wirtgen seeks injunctive and declaratory relief declaring that Defendants have exceeded the scope of the LEO issued by the Commission following the 1088 Investigation.

18.      Specifically, Customs has exceeded its authority by detaining and excluding from importation Wirtgen's Redesigned 1810 Series machines without providing any showing that these machines fall within the scope of the LEO.

19.      Wirtgen seeks an order directing Customs to (i) grant the excluded machines entry into the United States immediately, and (ii) refrain from further detaining, excluding, seizing, or

adjudicating the infringement of Wirtgen's redesigned machines, which are not covered by or within the scope of the LEO.

20.     Wirtgen seeks injunctive and declaratory relief ordering that the LEO does not cover products not adjudicated by the Commission, including the Redesigned 1810 Series machines, and enjoining Customs and its officers from excluding products that were not adjudicated by the Commission.

21.     Wirtgen seeks injunctive and declaratory relief that Defendants' actions are arbitrary, capricious, contrary to law, and in excess of statutory jurisdiction, authority, and limitation.

22.     Defendants' unlawful conduct has caused, and continues to cause, harm to Wirtgen justifying immediate and permanent injunctive relief.

## PARTIES

23.     Wirtgen is a privately held corporation organized and existing under the laws of the state of Tennessee, with its principal place of business at 6030 Dana Way, Antioch, Tennessee 37013-3116.

24.     The United States of America is a defendant on two (2) grounds: (i) on the basis of the actions of the Department of Homeland Security, acting through U.S. Customs and Border Protection, and (ii) because the United States of America is a proper defendant under 5 U.S.C. § 702.

25.     Defendant Department of Homeland Security has its principal office at 245 Murray Lane, S.W., Washington, D.C. 20528.

26.     The Department of Homeland Security is a federal agency headquartered in the District of Columbia.

27.     The Department of Homeland Security was created by the Homeland Security Act of 2002, 6 U.S.C. § 101 *et seq.*, Pub. L. No. 107-296.

28.     Defendant Chad F. Wolf is the Acting Secretary of the Department of Homeland Security.

29.     Mr. Wolf maintains an office at 245 Murray Lane, S.W., Washington, D.C. 20528.

30.     As Acting Secretary, Mr. Wolf is sued here in his official capacity.

31.     As Acting Secretary, Mr. Wolf has ultimate responsibility for the activities of the Department of Homeland Security, including those actions complained of herein.

32.     On information and belief, as Acting Secretary, Mr. Wolf and his officers are responsible for refusing importation of articles into the United States that are not subject to the LEO.

33.     Defendant U.S. Customs and Border Protection is within the Department of Homeland Security, organized pursuant to the Homeland Security Act of 2002, 6 U.S.C. § 101 *et seq.* ("Homeland Security Act").

34.     Customs was created by the Homeland Security Act. Pub. L. No. 107-296.

35.     The Homeland Security Act transferred the "functions, personnel, assets, and liabilities of . . . the United States Customs Service of the Department of Treasury, including the functions of the Secretary of the Treasury relating thereto," to the Secretary of Homeland Security. *See* 6 U.S.C. § 203.

36.     Pursuant to authority under Section 1502 of the Homeland Security Act, 6 U.S.C. § 542, the Customs Service was renamed as the "Bureau of Customs and Border Protection." Department of Homeland Security Reorganization Plan, part (2)A.3., H. Doc. No. 108-16, 108th Congress, 1st Session (Nov. 25, 2002).

37.     On April 23, 2007, the Department of Homeland Security published a notice that it changed the name of the Bureau of Customs and Border Protection to "U.S. Customs and Border Protection" effective March 31, 2007. 72 Fed. Reg. 20131 (Apr. 23, 2007).

38.     This name "U.S. Customs and Border Protection" was confirmed by Section 802 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125 (Feb. 24, 2016). *See* 6 U.S.C. § 211(a).

39.      The Trade Facilitation and Trade Enforcement Act established a Commissioner of Customs to head that agency. *Id.* § 211(b)(1).

40.     Customs is responsible for the enforcement of exclusion orders issued by the Commission.

41.     Customs is headquartered in the District of Columbia, and has its principal office at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

42.     Defendant Mark A. Morgan is the Acting Commissioner of Customs.

43.     Mr. Morgan maintains an office at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

44.     As Acting Commissioner, Mr. Morgan is sued here in his official capacity as an officer of the Secretary of the Department of Homeland Security.

45.     On information and belief, as the Acting Commissioner, Mr. Morgan is responsible for the activities of Customs, including the actions complained of herein.

46.     Defendant Juan J. Porras is the Director of Machinery Center of Excellence and Expertise of Customs.

47.     Mr. Porras maintains an office at 109 Shiloh Drive, Suite 300, Laredo, Texas 78045.

48.     As the Director, Mr. Porras is sued here in his official capacity as an officer of the Secretary of the Department of Homeland Security.

49.     On information and belief, as the Director of Machinery Center of Excellence and Expertise of U.S. Customs and Border Protection, Mr. Porras is responsible for making determinations regarding the importation of merchandise in the machinery industry, including the actions complained of herein.

50.     Defendant Charles Steuart is the Chief of the IPR Branch, which he purports to be part of the Office of International Trade of U.S. Customs and Border Protection.

51.     The Office of International Trade was established by Section 402 of the SAFE Port Act of 2006, and the Office of Regulations and Rulings was consolidated into it. Pub. L. No. 109-347.

52.     The Office of International Trade was later abolished by the Trade Facilitation and Trade Enforcement Act of 2015, and all its functions and personnel were transferred to the Office of Trade. *See* Pub. L. No. 114-125, 130 Stat. 122, 214 (Feb. 24, 2016); 19 U.S.C. § 2084(d)(1).

53.     On information and belief, Mr. Steuart's correct affiliation is with the Office of Trade.

54.     Mr. Steuart maintains an office at 90 K Street, N.E., Washington, D.C. 20229.

55.     Mr. Steuart is sued here in his official capacity as an officer of the Secretary of the Department of Homeland Security.

56.     On information and belief, as the Chief of the IPR Branch, Mr. Steuart is responsible for making determinations regarding the scope of exclusion orders, including the actions complained of herein.

## JURISDICTION AND VENUE

57.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337 and 5 U.S.C. § 702.

58.     Specifically, this action arises under acts of Congress regulating commerce, including 19 U.S.C. § 1337 and 19 U.S.C. § 1499.

59.     This action seeks declaratory and prospective relief against Customs' unlawful interpretation of the LEO and of Section 337 of the Tariff Act of 1930 (as amended) ("Section 337").

60.     This Court has jurisdiction because the action is not "within the exclusive jurisdiction of the Court of International Trade." 28 U.S.C. § 1337(c).

61.     The Court of International Trade only reviews Customs' denial of a protest filed with Customs pursuant to 19 C.F.R. § 174. *See* 28 U.S.C. § 1581(a).

62.     Wirtgen filed a protest on December 24, 2019, challenging Customs exclusion of Wirtgen's Redesigned 1810 Series machines under the LEO.

63.     Wirtgen argued that the LEO extends only to machines adjudicated by the Commission to infringe, that Customs lacks statutory authority and appointed officers to determine infringement, that Customs improperly rejected Wirtgen's certification, and that Customs may not place the burden of proof on Wirtgen.

64.     Customs denied Wirtgen's protest. Customs' entire basis for the denial is that "[t]he protest does not raise a protestable issue within the meaning of 19 U.S.C. 1514."

65.     In its decision denying Wirtgen's protest, Customs stated, "we find that the instant exclusions made by CBP pursuant to the 1088 LEO issued by the Commission under 19 U.S.C. § 1337 is not a subject matter subject to protest."

66.     19 U.S.C. § 1514(a)(4) states that "the exclusion of merchandise from entry . . . shall be final and conclusive . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, in the Court of International Trade."

67.     The Court of International Trade has exclusive jurisdiction over Customs' exclusion decisions pursuant to Section 337 exclusion orders only where they relate to the denial of a protest under 28 U.S.C. § 1581(a) and to associated administrative matters under 28 U.S.C. § 1581(i).

68.     Because the issues presented to Customs are not protestable issues, they are not within the exclusive jurisdiction of the Court of International Trade and, therefore, are within the jurisdiction of this Court under 28 U.S.C. § 1337(c).

69.     The Court of International Trade cannot decide and enforce statutory and constitutional challenges to Customs' system of enforcement because it only reviews Customs' denial of a protest. *Totes-Isotoner Corp. v. United States*, 594 F. 3d 1346, 1351 (Fed. Cir. 2010) ("[T]here is no protest remedy available to one challenging an unconstitutional statute because Customs lacks the power to declare a statute unconstitutional.").

70.     The Court of International Trade cannot rule on the type of systemic failure to comply with federal law that Wirtgen alleges here. *See Hall v. Sebelius*, 689 F. Supp. 2d 10, 24 (D.D.C. 2009).

71.     The Court of International Trade cannot offer prospective relief against continuing unlawful action by Customs. *See Corning Gilbert Inc. v. United States*, 896 F. Supp. 2d 1281, 1297 n.4 (C.I.T. 2013) ("To the extent that Plaintiff seeks prospective permanent injunctive relief, *see* Am. Compl. at 21-22, regarding entries that are not subject to the protest that is covered by this action, such request is beyond the scope of this action and the court's

jurisdiction under 28 U.S.C. § 1581(a).”); *Otter Prods., LLC v. United States*, 37 F. Supp. 3d 1306, 1314 (C.I.T. 2014) (“any preliminary injunction that the court may issue will be limited in effect to the entries subject to Otter’s denied protest”).

72.     Customs warned that it will seize and seek forfeiture of future machines imported by Wirtgen—despite admitting that the Commission never adjudicated their infringement.

73.     On January 14, 2020, the Commission issued a seizure and forfeiture order. That order states: “Road Construction Machines and Components Thereof that are imported in violation of the limited exclusion order issued in the above-captioned investigation are to be seized and forfeited to the United States, if imported by the following firm: Wirtgen America Inc., 6030 Dana Way, Antioch, Tennessee 37013.”

74.     The seizure and forfeiture order does not clarify or interpret the scope of the LEO.

75.     On information and belief, in reliance on the seizure and forfeiture order, Customs intends to seize any Redesigned 1810 Series machines that Wirtgen may attempt to import in the future.

76.     The threat of seizure and forfeiture is a continuing unlawful action.

77.     The Court of International Trade’s residual jurisdiction clause, 28 U.S.C. § 1581(i)(4) is confined to the “administration and enforcement” of protests under subsection (a). It does not confer jurisdiction broader than any one particular protest decision. *See Nat’l Corn Growers Ass’n v. Baker*, 840 F. 2d 1547, 1557 (Fed. Cir. 1988) (“Subsection (i) is . . . not [intended] to create any new causes of action not founded on other provisions of law.”) (citing H.R. No. 1235, 96th Cong., 2d Sess., at 47 of 28 U.S.C. § 1581(i)(4)) (alterations in original).

78.     This action seeks (i) a declaration that systemic practices of Defendants are unlawful and unconstitutional and (ii) an injunction against further application of those practices against future shipments.

79.     Defendants have also unlawfully detained machines other than Redesigned 1810 Series machines that do not and have never included the feature accused of infringement.

80.     On information and belief, Defendants will continue these unlawful actions against Wirtgen.

81.     Wirtgen is entitled to a declaratory order that the LEO cannot lawfully extend to such machines and an injunction ordering Defendants to cease their unlawful adjudications.

82.      Wirtgen cannot pursue an administrative ruling through Customs because Customs lacks authority to interpret both Section 337 of the Tariff Act and the U.S. Constitution.

83.     Customs' ruling would also not be appealable to the Court of International Trade.

84.     On information and belief, such a request would be decided in violation of the Appointments Clause.

85.     Wirtgen has exhausted all of its available administrative remedies.

86.     Pursuit of any further administrative remedies is futile.

87.     Customs' regulations prohibit Wirtgen from requesting an administrative ruling.

88.     Wirtgen's shipments, which were already excluded, are "completed" Customs transactions that are "final in nature." 19 C.F.R. § 177.1(d)(3).

89.     Customs cannot lawfully issue an administrative ruling regarding completed transactions. 19 C.F.R. § 177.7(a) ("No ruling letter will be issued in regard to a completed transaction."); *id.* § 177.1(a)(2)(ii).

90.     Even if an administrative ruling were available, such rulings can be revoked at any time. 19 C.F.R. § 177.12.

91.     Administrative rulings are not subject to judicial review unless the importer shows it would be "irreparably harmed unless given an opportunity to obtain judicial review prior to such importation." 28 U.S.C. § 1581(h).

92.     Customs indicated that Wirtgen could pursue an advisory opinion or a modification proceeding at the Commission.

93.     Such advisory opinions are also revocable and not appealable. 19 C.F.R. § 210.79; *Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1578 (Fed. Cir. 1988).

94.     Such advisory opinions are not subject to judicial review.

95.     The plain language of the LEO and the Commission's opinion—by their terms—do not apply to the Redesigned 1810 Series machines.

96.     Consequently, a proceeding to seek modification of the LEO would not lawfully afford relief to Wirtgen. Wirtgen therefore did not seek a modification proceeding.

97.     On January 16, 2020, the Commission determined, sua sponte, to initiate a modification proceeding.

98.     The Commission cannot adjudicate Wirtgen's redesigned machines through a modification proceeding.

99.     Modification proceedings may determine only "that the conditions which led to . . . exclusion from entry no longer exist." 19 U.S.C. § 337(k)(1); 19 C.F.R. § 210.76(a)(1).

100.    The 1088 Investigation found only the original 1810 Series machines to infringe.

101.    A modification proceeding only has statutory authority to reevaluate that determination, such as to rescind the exclusion order in view of changed conditions.

102.    A modification proceeding cannot determine the *new* question of whether Wirtgen's Redesigned 1810 Series machines infringe.

103.    A modification proceeding that purports to litigate issues beyond its statutory authority is without legal basis.

104.    Wirtgen is not required to exhaust unlawful administrative remedies before challenging unlawful agency action.

105.    In any case, exhaustion is not required by the trade statutes that Customs administers unless the matter would be within the jurisdiction of the Court of International Trade. *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under § 10(c).").

106.    Further attempts to pursue administrative remedies would also be futile, because Wirtgen challenges Defendants' systemic failure to comply with federal law and the U.S. Constitution. *See Hall*, 689 F. Supp. 2d at 24.

107.    Wirtgen does not ask this Court to review the merits of non-infringement for the Redesigned 1810 Series machines.

108.    Wirtgen requests that this Court determine that it is unlawful for Defendants to consider and rule upon infringement.

109.    On information and belief, judicial resolution of the issues raised in this complaint will not interfere with the agency's efficient functioning.

110.    On information and belief, judicial resolution of the issues raised in this complaint will not thwart any effort at self-correction.

111.    On information and belief, judicial resolution of the issues raised in this complaint will not deny the court or parties the benefit of the agency's experience or expertise.

112.    On information and belief, judicial resolution of the issues raised in this complaint will not curtail development of a record useful for judicial review. *Tataranowicz v. Sullivan*, 959 F. 2d 268, 275 (D.C. Cir. 1992).

113.    After Customs unlawfully excluded five of Wirtgen's Redesigned 1810 Series machines on December 17, 2019, Wirtgen filed a protest on December 24 setting forth multiple grounds as to why Customs' actions were unlawful.

114.    On December 27, 2019, Customs proceeded to exclude another Redesigned 1810 Series machine.

115.    Customs' explanation for its actions on December 27 was nearly identical to the December 17 Notice of Exclusion.

116.    On December 31, 2019, Wirtgen filed a protest against the December 27 Notice of Exclusion.

117.    The Court of International Trade will not hear Wirtgen's request for prospective relief against Customs' continuing violations of the law.

118.    The statutory and constitutional issues that Wirtgen raises are identical for both vacating Customs' unlawful exclusion decisions and issuing prospective relief.

119.    Wirtgen's claims about the illegality and unconstitutionality of Defendants' procedures do not depend on any facts that will be developed by Defendants' decisions on Wirtgen's protests. *See Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 75 (D.C. 2018); *see also Tataranowicz v. Sullivan,* 753 F. Supp. 978, 987 (D.D.C. 1990), *rev'd on other grounds,* 959 F. 2d 268 (D.C. Cir. 1992) ("[W]here a claimant alleges more than deviation from applicable regulations and instead asserts a system-wide . . . policy . . . which does not depend on the particular facts of the claimant's case, the exhaustion requirement may be excused.") (first alteration in original) (internal quotations omitted).

120.    Because the administrative process for protests will not provide any development of the factual record to aid in a determination, these questions are ready for such determination. *See Am. Hosp. Ass'n*, 348 F. Supp. 3d at 75.

121.   This Court has the authority to grant the relief requested by Wirtgen under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, under 19 U.S.C. § 1337, and under 28 U.S.C. §§ 2201-2202.

122.   This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

123.   Additionally, this Court has personal jurisdiction over the parties because, on information and belief, Defendants have certain sufficient minimum contacts with the District of Columbia such that the maintenance of this suit would not offend traditional notions of fair play and substantial justice.

124.   Specifically, Defendants Department of Homeland Security, Customs, Chad F. Wolf, Mark A. Morgan, and Charles Steuart each have offices in the District of Columbia.

125.   Defendant Charles Steuart received notice of the LEO from the Commission at his office in the District of Columbia and performs his job duties from his office in this judicial district.

126.   Defendant Juan J. Porras drafted the notices excluding Wirtgen's machines in collaboration with high-level Customs officials located in Washington, D.C.

127.   The notices signed by Juan J. Porras discuss communications between Wirtgen's counsel and Customs officials in Washington, D.C.

128.   The United States has waived Defendants' sovereign immunity.

129.   Wirtgen is "seeking relief other than money damages" by pursuing injunctive and declaratory relief. 5 U.S.C. § 702.

130.   Additionally, as explained above, there is no other adequate remedy in a court to redress the harm inflicted upon Wirtgen from Defendants' statutory violations. 5 U.S.C. § 704.

131.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because at least one Defendant resides in this judicial district, and all other Defendants reside in the State in which the judicial district is located.

132.    Alternatively, venue is proper because a substantial part of the events giving rise to Wirtgen's claims occurred in this judicial district.

133.    Specifically, the Department of Homeland Security and Customs are headquartered within this judicial district.

134.    Chad F. Wolf, the Acting Secretary of the Department of Homeland Security, resides within this judicial district.

135.    Mark A. Morgan, the Acting Commissioner of Customs, resides within this judicial district.

136.    Charles Steuart, the Chief of the IPR Branch, resides within this judicial district.

137.    Venue is proper in this judicial district over Juan J. Porras, the Director of Machinery Center of Excellence and Expertise of Customs, for the following reasons (i) Mr. Porras drafted and signed the Notices of Exclusion for Wirtgen's machines in collaboration with high-level Customs officials located in Washington, D.C., and (ii) communications and meetings between Wirtgen and Customs officials have taken place at Customs' Intellectual and Property Rights Branch located at 90 K Street N.E., Washington, D.C. 20229.

138.    Additionally, on information and belief, Mr. Porras is involved in a coordinated enforcement action among multiple ports of entry into the United Sates against Wirtgen, including ports in Baltimore and Brunswick.

## BACKGROUND

### I.     Wirtgen and Wirtgen's Innovative Technology

139.    Wirtgen is the exclusive U.S. distributor for products of the Wirtgen Group companies, including Wirtgen-brand milling, recycling, and paving machines, Vögele-brand asphalt paving machines, Hamm-brand rollers, and Kleemann-brand rock crushing machines.

140.    Road-milling machines are a key component of Wirtgen's business. These machines are used by the heavy construction industry to in road projects and are essential to many high-value construction projects with strict deadlines.

141.    Wirtgen has become the industry leader not only through the sale and distribution of innovative road-milling machines of the highest quality, but also through the provision of custom manufacturing, support, and training services that help customers to successfully use these machines.

142.    For example, Wirtgen provides post-importation manufacturing to customize machines to the customer's needs, provides repair services in the workshop, sends field-service technicians to provide on-site assistance, uses diagnostics technology and trained personnel to remotely provide technical support, maintains a warranty program, and conducts hands-on training courses in a dedicated facility with custom-built training equipment.

### II.    The U.S. International Trade Commission and U.S. Customs and Border Protection

143.    The U.S. International Trade Commission is an executive agency with six commissioners. 19 U.S.C. § 1330.

144.    The Commission has statutory authority to investigate and order the exclusion of unlawful products from entering the United States.

145.    Unlawful products can include products that the Commission determines to infringe valid U.S. patents, copyrights, or trademarks.

146.    The Commission's authority to investigate goods accused of patent infringement comes from Section 337 of the Tariff Act of 1930 (as amended). This statute prohibits "[t]he importation into the United States . . . of articles that infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B).

147.    The Commission has authority to investigate alleged violations on complaint or on its own initiative, the investigation of which includes a determination of (i) whether the articles infringe, and (ii) whether the patent is valid and enforceable, as well as "[a]ll legal and equitable defenses" that may be presented. 19 U.S.C. § 1337(b) and (c).

148.    If, as a result of the investigation, the Commission determines that there is a violation of this section, the Commission shall direct that the articles imported by any person violating the provision of Section 1337 be excluded from entry. 19 U.S.C. § 1337(d)(1).

149.    The Commission "direct[s] the articles concerned" to "be excluded" by issuing an exclusion order. *Id.*

150.    Section 337 specifies that the Commission must notify the Secretary of the Treasury of the order.

151.    The Secretary of the Treasury is then responsible for carrying out the exclusion of the articles subject to the order.

152.    In 1991, the Director of the Office of Regulations and Rulings, a part of the U.S. Customs Service within the Department of the Treasury, issued a notice of reorganization of the Treasury that created, among other things, the Intellectual Property Rights Branch. 56 Fed. Reg. 41159, 1991 WL 544078, at *4 (Aug. 19, 1991).

153.    According to the notice, the Intellectual Property Rights Branch's responsibilities include "implementation of exclusion orders issued by the ITC." *Id.*

154.    Section 403 of the Homeland Security Act then transferred to the Secretary of Homeland Security the functions of "the United States Customs Service of the Department of the Treasury, including the functions of the Secretary of the Treasury relating thereto." *See* 6 U.S.C. § 203(1); *see also id.* § 212(a)(2) (giving the Secretary of the Treasury authority to delegate any Customs-related duties retained under the Homeland Security Act).

155.    On May 15, 2003, the Secretary of the Treasury further delegated "general authority over Customs revenue functions" including the authority in Section 412 of the Homeland Security Act, to the Secretary of Homeland Security. *See* Treasury Order No. 100-16 (May 15, 2003) (*available at* https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/to100-16.aspx) (last accessed Jan. 5, 2020); *see also* Appendix to 19 C.F.R. § 0.

156.    The Secretary of the Treasury reaffirmed this delegation on September 8, 2011. *Id.*

157.    On information and belief, the Secretary of Homeland Security has since re-delegated an unspecified quantity of the powers delegated to him by the Treasury.

158.    On information and belief, the Secretary of Homeland Security has re-delegated those powers to Customs via Delegation 07010, Revision 03, Delegation of Authority to the Commissioner of U.S. Customs and Border Protection, dated May 11, 2006. *See, e.g.*, 72 Fed. Reg. 59167 (Oct. 19, 2007).

159.    On information and belief, there is no authority for this delegation.

160.    On information and belief, it is publicly unknown what powers the Secretary of Homeland Security delegated, if at all.

161.    The absence of such publicly accessible information does not comport with the Administrative Procedure Act and the Appointments Clause of the U.S. Constitution.

162.    On information and belief, the IPR Branch continues to be responsible for enforcing exclusion orders, but answers to the Secretary of Homeland Security rather than the Secretary of the Treasury.

163.    On information and belief, after the Commission determines that a respondent has imported "articles that infringe a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B)(i), the Commission issues a notice to the IPR Branch to exclude "the articles concerned." 19 U.S.C. § 1337(d)(1).

164.    Then "the Secretary shall, through the proper officers, refuse such entry." *Id.*

165.    In other words, the Commission informs the Secretary of the Treasury precisely what articles violated Section 337, and the Secretary (or the Secretary's delegate) excludes those articles.

166.    Section 1337 of Title 19 is the only source of authority for the executive branch to exclude patent-infringing goods from importation into the country.

167.    The LEO, provided by the Commission, is the only determination of which goods are infringing and shall be excluded.

168.    There is no other source of authority pursuant to which the Department of Homeland Security or Customs, through the IPR Branch or otherwise, may detain, seize, or exclude goods at ports of entry to the United States on the basis of patent infringement.

## III.    Proceedings Before the U.S. International Trade Commission

169.    Caterpillar Inc. and Caterpillar Paving Products, Inc. filed a complaint before the U.S. International Trade Commission asserting, *inter alia*, that certain models of Wirtgen's milling machines infringe U.S. Patent No. 7,140,693 (the "'693 patent"). *See* Investigation No. 337-TA-1088, *Certain Road Construction Machines and Components Thereof* (instituted Nov. 29, 2017).

170.    The Commission's administrative law judge ("ALJ") conducted an evidentiary hearing on September 25 and 26, 2018, and issued a Final Initial Determination ("FID") finding a violation of Section 337 on February 14, 2019.

171.    The FID found all the asserted claims invalid except claim 19.

172.    Specifically, the FID found that claims 1, 15, 16, 17, 18, 24, 26, 27, 28, 36, and 38 of the '693 patent are invalid as anticipated under 35 U.S.C. § 102 by the prior art Bitelli SF 102 C machine, and claims 1, 15, 16, 17, 18, 24, 26, 27, 36, and 38 of the '693 patent are invalid as obvious under 35 U.S.C. § 103 in view of the prior art Bitelli Volpe SF 100 T4M machine and U.S. Patent No. 3,633,292 to Ulrich.

173.    The FID also found that the Wirtgen W 100 CFi, W 120 CFi, and W 130 CFi road-milling machines (collectively, the "1810 Series" machines), infringe claim 19.

174.    Specifically, the FID found that the swing leg on these machines rotates by an actuator rotating a portion of the lifting column on which the swing leg is mounted, as recited in claim 19.

175.    The ALJ recommended that the Commission issue a LEO against Wirtgen.

176.    While the Commission's investigation was underway, Wirtgen filed a petition for *inter partes* review ("IPR") at the United States Patent and Trademark Office ("USPTO") challenging the validity of the '693 patent. *See Wirtgen Am., Inc. v. Caterpillar Paving Prods., Inc.*, IPR2018-01201, Paper 13 (Jan. 8, 2019) (instituting review of all challenged claims). On December 13, 2019, the Patent Trial and Appeal Board ("PTAB") issued a Final Written Decision determining that all challenged claims—including claim 19—are unpatentable as obvious on at least two independent bases. *See id*., Paper 32 (Dec. 13, 2019). The United States Court of Appeals for the Federal Circuit will therefore likely hold that Wirtgen is not infringing a valid claim and the Commission should never have issued the LEO in the first place.

177.    The Commission affirmed the administrative law judge's determination in relevant part and issued the recommended remedies against Wirtgen's 1810 Series machines.

178.    Wirtgen timely appealed the Commission's decision to the United States Court of Appeals for the Federal Circuit, and that appeal remains pending.

179.    During the course of the Commission's investigation, Wirtgen redesigned the swing leg of its 1810 Series machines.

180.    Wirtgen based its Redesigned 1810 Series machines on features of prior-art swing-leg mountings.

181.    The FID found those mountings did not practice claim 19.

182.    The Redesigned 1810 Series machines do not include an actuator that rotates a portion of the lifting column on which the swing leg is mounted.

183.    Wirtgen replaced the features that the Commission found to infringe with the features the Commission later found not to infringe.

184.    Wirtgen produced evidence regarding the operability and functionality of its Redesigned 1810 Series machines.

185.    The ALJ held that she would not adjudicate the redesigns or determine infringement in her initial determination.

186.    She determined that "[t]hese designs" are "outside the scope of [the] investigation" and "not ripe for a determination of infringement or non-infringement in this investigation."

187.    The Commission adopted this portion of the ALJ's determination, making it final.

188.    Following the Commission's infringement determination, Wirtgen undertook significant efforts to commercialize its Redesigned 1810 Series machines to avoid the '693

patent, so that it could continue importing these machines without violating the terms of the LEO.

189.    Wirtgen incorporated a designation for the redesigned swing leg into its product label.

190.    That designation identifies to third parties (e.g., Customs agents) that such machines are Redesigned 1810 Series machines.

191.    The Redesigned 1810 Series machines still bear serial numbers designating them as 1810 Series machines but have new branding.

192.    The new branding includes "W 100 XFi."

193.    The new branding also includes "W 100 XTi."

194.    The new branding also includes "W 120 XFi."

195.    The new branding also includes the "W 120 XTi."

196.    The new branding also includes the "W 130 XFi."

197.    The new branding also includes the "W 130 XTi."

198.    The "X" indicates that the machines have a new swing-leg design.

199.    The new swing-leg design is ubiquitous across all of the Redesigned 1810 Series machines.

200.    The "F" and the "T" indicate differences among the machines regarding features wholly unrelated to the swing leg.

201.    Those differences are chiefly related to cost.

202.    On information and belief, the Commission addressed and transmitted the notice of the LEO to Defendant Charles Steuart of the IPR Branch of Customs.

203.    On information and belief, the "Office of Regulations and Rulings in the Office of International Trade," as it appears on Mr. Steuart's documentation, does not exist.

204.    On information and belief, the IPR Branch purports to have a different structure than the controlling regulations indicate.

205.    The unregulated change in the agency's structure does not comport with the APA and the Appointments Clause of the U.S. Constitution.

IV.    **Events Following the Commission's Remedial Orders**

206.    Following the Commission's transmission of the notice of the LEO to Mr. Steuart at the IPR Branch, Wirtgen reached out to the IPR Branch to arrange a meeting.

207.    Wirtgen requested the meeting to demonstrate which of Wirtgen's different products were subject to the LEO and how Customs agents could distinguish between excluded and non-excluded products.

208.    Wirtgen manufactures and imports different sizes, classes, and kinds of road milling machines, recyclers, pavers, and replacement parts.

209.    The 1088 Investigation concerned one particular series of milling machines (i.e., the 1810 Series machines), which includes a rear swing leg.

210.    Wirtgen sells other series of milling machines that do not include swing legs.

211.    The only method, manner, or fashion by which Wirtgen could explain the information to the agents inspecting its products at ports of entry was through a presentation to the IPR Branch of Customs.

212.    On August 13, 2019, Wirtgen's counsel met with Customs officials in Washington, D.C., to discuss the structure and operation of the Redesigned 1810 Series machines, as well as to explain Wirtgen's other products.

213.    Wirtgen also explained how to identify the Redesigned 1810 Series machines by their number and designation.

214.    On August 15, 2019, Wirtgen's counsel exchanged emails with Customs officials regarding that meeting.

215.    On September 5, 2019, Wirtgen's counsel sent Customs a memorandum.

216.    That memorandum explained how the swing-leg design of the Redesigned 1810 Series machines is different from the design of the excluded 1810 Series machine.

217.    That memorandum also explained why the swing-leg design of the Redesigned 1810 Series machines is not subject to the LEO.

218.    The memorandum, dated September 5, 2019, included photographs and videos of the 18101069 machine that were referenced in that memo.

219.    Wirtgen's counsel informed Customs that Wirtgen would soon import, at the port of Baltimore, Maryland, the first Redesigned 1810 Series machine, a W 120 XFi machine with serial number 18101069.

220.    Wirtgen informed Customs how to identify the Redesigned 1810 Series machines using the information in the manifest.

221.    Wirtgen also informed Customs how to identify the Redesigned 1810 Series machines by visual inspection.

222.    Wirtgen also offered to send a technician to (i) demonstrate the operation of the Redesigned 1810 Series machine at the port, and (ii) answer any questions that Customs may have about the swing leg.

## V.    Customs' Detention and Exclusion of Wirtgen's Machines

223.    On September 9, 2019, Wirtgen imported the W 120 XFi with serial number 18101069.

224.    Customs permitted that W 120 XFi machine to be imported; accordingly, it was not detained.

225.    All subsequent Redesigned 1810 Series machines have used the same swing-leg design as the 18101069 machine.

226.    On or about November 11, 2019, Wirtgen imported a W 120 XFi machine having serial number 18101082. Customs permitted that W 120 XFi machine to be imported; it was not detained.

227.    On or about November 4, 2019, Wirtgen imported a W 120 XFi machine having serial number 18101083. Customs permitted that W 120 XFi machine to be imported; it was not detained.

228.    On or about November 4, 2019, Wirtgen imported a W 120 XTi machine having serial number 18101085. Customs permitted that W 120 XTi machine to be imported; it was not detained.

229.    On or about November 12, 2019, Wirtgen imported a W 120 XFi machine having serial number 18101087. Customs permitted that W 120 XFi machine to be imported; it was not detained.

230.    On or about November 23, 2019, Wirtgen imported a W 120 XFi machine having serial number 18101091. Customs permitted that W 120 XFi machine to be imported; it was not detained.

231.    On or about November 23, 2019, Wirtgen imported a W 120 XFi machine having serial number 18101093. Customs permitted that W 120 XFi machine to be imported; it was not detained.

232.    On or about December 13, 2019, Wirtgen imported a W 120 XTi machine having serial number 18101095. Customs permitted that W 120 XTi machine to be imported; it was not detained.

233.    On or about December 13, 2019, Wirtgen imported a W 120 XTi machine having serial number 18101096. Customs permitted that W 120 XTi machine to be imported; it was not detained.

234.    The W 120 XFi Redesigned 1810 Series machines and W 120 XTi Redesigned 1810 Series machines that Customs permitted to be imported each used the same swing-leg design as the 18101069 machine.

235.    On November 18, 2019, at the port of Brunswick, Georgia, Customs detained two Redesigned 1810 Series machines.

236.    These two machines were a W 120 XFi having serial number 18101084 and a W 120 XTi having serial number 18101086.

237.    On November 21, 2019 at the port of Brunswick, Georgia, Customs detained three more Redesigned 1810 Series machines.

238.    These three machines were a W 120 XTi  having serial number 18101088, a W 120 XTi  having serial number 18101089, and a W 120 XFi  having serial number 18101092.

239.    On December 17, 2019, Customs excluded these five Redesigned 1810 Series machines.

240.    On December 27, 2019, Customs excluded a sixth machine. This machine was a W 120 XFi having serial number 18101094.

241.    Customs issued Notices of Exclusion formalizing these actions.

242.    Defendant Juan Porras, Director for the Center for Excellence, signed the Notices of Exclusion.

243.    On information and belief, the Commissioner of U.S. Customs and Border Protection has not re-delegated to Mr. Porras the authority to exclude products under Section 337.

244.    Mr. Porras was not the individual to whom the Commission addressed transmission of the LEO.

245.    Mr. Porras's authority is not provided by statute or regulation.

246.    Mr. Porras's authority does not comport with the Administrative Procedure Act and the Appointments Clause of the U.S. Constitution.

247.    The Redesigned 1810 Series machines that Customs has excluded are not the articles that were adjudicated in the 1088 Investigation.

248.    The administrative law judge found that these products were outside the scope of the 1088 Investigation.

249.    These products are therefore also outside the scope of the LEO.

250.    Customs wrongly detained and excluded Wirtgen's modified machines.

251.    Customs does not have the authority to adjudicate whether products infringe patents.

252.    Customs does not have the authority to exclude products that fall outside the scope of a LEO.

253.    The detention and exclusion of Wirtgen's Redesigned 1810 Series machines violate the APA.

254.    The detention and exclusion of Wirtgen's Redesigned 1810 Series machines violate the Appointments Clause of the U.S. Constitution.

255.    The detention and exclusion of Wirtgen's Redesigned 1810 Series machines violate Wirtgen's procedural due process rights.

**VI.    Harm to Wirtgen**

256.    Wirtgen's inability to deliver the machines excluded by Customs has already caused significant harm to Wirtgen.

257.   If Customs continues detaining and excluding Wirtgen shipments, Wirtgen expects to see additional delays which will cause, among other harms, loss of sales, loss of customers, loss of market share, and loss of future-parts sales.

258.   None of these harms can be redressed post-exclusion.

259.   Customs actions will irreparably harm Wirtgen's goodwill with its customers.

260.   Customs actions will prevent Wirtgen from filling current orders, many of which have already been invoiced.

261.   Many of Wirtgen's customers purchase machines after committing to fulfill a contract with a third party.

262.   Thus, Wirtgen's customers can suffer significant financial losses if machines do not arrive or deliver on time.

263.   Because of the risks Wirtgen's customers face in the road-construction industry, they value Wirtgen's reliability as a business partner and vendor.

264.   Wirtgen's reputation is essential to Wirtgen's continued success in the United States.

265.   The road-milling machine market typically sees an increase in sales during the winter months, as customers seek to purchase new machines for the upcoming paving season.

266.   Wirtgen has already received purchase orders for the Redesigned 1810 Series machines.

267.   To fill those orders, many of which have already been invoiced, Wirtgen must import Redesigned 1810 Series machines that are produced in manufacturing facilities in Windhagen, Germany.

268.   The Redesigned 1810 Series machines excluded by Customs thus far have already been sold.

269.    Wirtgen's customers expected delivery of the Redesigned 1810 Series machines by the end of 2019. The detained machines still have not been delivered.

270.    Failure to timely deliver will have substantial negative consequences for Wirtgen, its dealers, and its customers.

271.    Work and tax incentives may not be realized.

272.    Wirtgen also expects that the orders for these machines will be cancelled if Wirtgen cannot meet the delivery deadlines.

273.    The total retail sales value for the Redesigned 1810 Series machines excluded thus far is approximately several million dollars.

274.    As of December 22, 2019, Wirtgen had many purchase orders for the Redesigned 1810 Series machines awaiting fulfillment, implicating several million dollars in sales.

275.    Wirtgen only has a single unit in inventory valued at a few hundred thousand dollars.

276.    If Wirtgen is unable to timely deliver these machines, Wirtgen's reputation for reliability with customers will be severely damaged.

277.    Although all Redesigned 1810 Series machines are part of the same series, the purchase orders vary in the machine specifications.

278.    In particular, the purchase orders contain differences in the specifications for the cutter housing and cutter drum width.

279.    Customers specify differences so as to obtain machines customized specifically for the types of jobs they expect to encounter.

280.    Wirtgen expects to fulfill many orders for Redesigned 1810 Series machines in the next few months of 2020.

281.    Projected total sales of Redesigned 1810 Series machines for 2020 are estimated to be millions of dollars.

## VII.    Defendants' Actions Are Subject to Challenge Under the Administrative Procedure Act

282.    Customs' exclusion of Wirtgen products from the United States and detainment of Wirtgen products already imported into the United States constitute agency actions under 5 U.S.C. § 551(13).

283.    A plaintiff "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," except to the extent that the "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. §§ 701-702.

284.    No statute precludes judicial review of Customs' improper enforcement of the LEO.

285.    Customs is not entitled to discretion in its enforcement of the LEO.

286.    Customs' enforcement of the LEO is a statutory imperative under 19 U.S.C. § 1337(d)(1) and 19 C.F.R. § 12.39(b)(2).

287.    Customs' Notices of Exclusion, issued December 17, 2019 and December 27, 2019, are final agency actions because they excluded Wirtgen's machines, totaling millions of dollars, and warned that future imports may be seized and forfeited.

288.    The Notices of Exclusion (i) require that Wirtgen export or store the machines within thirty days of issuance, and (ii) warn that failure to do so will result in Customs disposing of the machines.

289.    This will occur even if Wirtgen files a protest or seeks an informal resolution with Customs.

290.    Under 5 U.S.C. § 706, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be[, inter alia,] (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .  [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

291.    In ignoring the plain language of the LEO and interpreting the LEO in view of unpublished Commission statements in an arbitrary and capricious manner, Customs exceeds its statutory jurisdiction and authority, and violates the Appointments Clause of the U.S. Constitution.

## COUNT I: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. §§ 701-706 AND 19 U.S.C. § 1337)

292.    Wirtgen incorporates by reference the allegations set forth in paragraphs 1–290 above, as if fully set forth herein.

293.    Defendants determined in the Notices of Exclusion, dated December 17, 2019, and December 27, 2019, that the LEO covers Wirtgen's Redesigned 1810 Series machines.

294.    These machines are unadjudicated products as they were outside the scope of the Commission's 1088 Investigation.

295.    Defendants determined that they have authority, pursuant to the LEO, to adjudicate infringement of Wirtgen's machines.

296.    This determination was contrary to law and in excess of Defendants' authority, as well as arbitrary and capricious.

297.    At least the following actions were arbitrary, capricious, and contrary to controlling law under the APA (1) Defendants have ignored the plain language of the LEO, which is directed only to adjudicated products; (2) Defendants have purported to enforce the LEO under Section 1337(d) of Title 19 against unadjudicated products, in contravention of

Section 1337 of Title 19; (3) Defendants improperly looked to unpublished and non-binding Commission statements to interpret the LEO; (4) Defendants adjudicated whether products infringe a U.S. patent without any statutory or constitutional authority to do so; and (5) when Wirtgen raised these legal deficiencies via protest pursuant to 19 C.F.R. § 174, Defendants avoided consideration of those issues by determining—contrary to decades of prior practice— that the decision to exclude Wirtgen's Redesigned 1810 Series machines was not subject to protest and, consequently, not subject to judicial review.

298.    Defendants' action in requiring Wirtgen to prove "as a condition of entry" that its unadjudicated milling machines "do not infringe claim 19" of the '693 patent was arbitrary, capricious, and contrary to controlling law.

299.    Defendants do not have the authority to (i) decide on the merits whether unadjudicated products infringe a valid patent; (ii) assign to the importer the burden of proving a non-infringement showing; and/or (iii) create a quasi-judicial proceeding through which an importer must make such a showing.

300.    Defendants never identified any statute or regulation supporting this practice.

301.    Defendants instead cited court decisions from decades ago.

302.    The portions of those court decisions to which Defendants cited were dicta.

303.    In those decisions, the burden of proof was not in dispute.

304.    No statute or regulation supports this practice.

305.    Defendants' exclusion of Wirtgen's machines are final agency actions that have caused, and will continue to cause, irreparable harm to Wirtgen.

306.    Defendants' threat to seize and seek forfeiture of future shipments have caused, and will continue to cause, irreparable harm to Wirtgen.

307.    Wirtgen has exhausted all its available administrative remedies.

308.     Pursuit of any further administrative remedies is futile.

309.     Wirtgen is legally entitled to (i) immediate entry of the excluded Wirtgen

machines into the U.S., and (ii) an injunction against Defendants' unlawful activity.

### COUNT II: VIOLATION OF THE APPOINTMENTS CLAUSE
### (U.S. CONST., ART. II, § 2, CL. 2)

310.     Wirtgen incorporates by reference the allegations set forth in paragraphs 1–308

above, as if fully set forth herein.

311.     Adjudication of patent infringement by Defendant Juan J. Porras violates the

Appointments Clause of the U.S. Constitution.

312.     Adjudication of patent infringement by Defendant Charles Steuart violates the

Appointments Clause of the U.S. Constitution.

313.     On information and belief, Mr. Porras made the decision to exclude Wirtgen's

Redesigned 1810 Series machines.

314.     On information and belief, Mr. Porras made that decision while operating under

the supervision of Mr. Steuart.

315.     When the Commission prepared the letter transmitting the LEO, it sent the letter

to Charles Steuart, Chief, IPR Branch, Office of Regulations and Rulings, Office of International

Trade, U.S. Customs and Border Protection.

316.     Each of the Notices of Exclusion were signed by Juan J. Porras, Director of the

Machinery Center of Excellence and Expertise, U.S. Customs and Border Protection.

317.     The Notices of Exclusion state that if Wirtgen believes the exclusion was made in

error, then Wirtgen should contact Mr. Steuart via email and copy

"IPRBranch.ITC337.Admin@cbp.dhs.gov."

318.     No contact information was provided for Mr. Porras.

319.     On January 21, 2020, Customs denied Wirtgen's protest of the December 17, 2019 Notices of Exclusion. The protest denial decision was signed by Mr. Steuart.

320.     The protest denial decision was sent to Mr. Porras instructing that "this protest should be denied as not protestable."

321.     Mr. Porras does not have authority to enforce Section 337 exclusion orders.

322.     Mr. Steuart does not have authority to enforce Section 337 exclusion orders.

323.     Section 337 requires the Commission to notify the Secretary of the Treasury of any order issued under Section 337, and upon receipt of such notice, "the Secretary shall, through the proper officers, refuse such entry." 19 U.S.C. § 1337(d)(1).

324.     A delegation of authority, including that regarding exclusion orders, to the IPR Branch occurred in 1991, as part of the U.S. Customs Service within the Department of the Treasury. 56 Fed. Reg. 41159, 1991 WL 544078, at *4 (Aug. 19, 1991).

325.     That delegation was superseded when, in 2003, the Secretary of the Treasury delegated the authority over exclusion-order enforcement to the Secretary of Homeland Security. *See* Appendix to 19 C.F.R. § 0.1.

326.     On information and belief, the Department of Homeland Security claims that in Delegation 07010, Revision 03 (May 11, 2006), the Secretary of Homeland Security re-delegated an unspecified quantity of these Treasury-derived powers to the Commission of Customs and Border Protection. *See*, *e.g.*, 72 Fed. Reg. 59167 (Oct. 19, 2007).

327.     On information and belief, the statutes and regulations of Customs, Treasury, and Homeland Security contain no evidence of these delegations.

328.     On information and belief, authority over exclusion-order enforcement was not delegated back to the IPR Branch.

329.     Mr. Steuart is an officer of the United States.

330.    Mr. Steuart, in determining whether products infringe patent claims and whether they may be imported, exercises significant authority pursuant to the laws of the United States.

331.    Mr. Porras is an officer of the United States.

332.    Mr. Porras, in determining whether products infringe patent claims and whether they may be imported, exercises significant authority pursuant to the laws of the United States.

333.    With respect to Wirtgen, these officers found that (i) the modified machines "potentially infring[e]" claim 19 of the '693 patent, and (ii) Wirtgen failed to prove the modified machines were non-infringing.

334.    As a result of that determination, Wirtgen's machines, totaled at a value of millions of dollars, have been prohibited entry into the United States, and future imports are threatened with seizure and forfeiture.

335.    Mr. Steuart exercises authority comparable to that of a federal district judge conducting a bench trial.

336.    For example, in making infringement determinations, Mr. Steuart has ruled on the applicability of an importer's argument for collateral estoppel against a patent holder's infringement arguments. *See, e.g.*, Cust. & Border Prot. Dec. No. H300761, at 47 (Dec. 18, 2018).

337.    On information and belief, Mr. Steuart regularly applies the framework of claim construction and infringement to determine whether products are covered by exclusion orders. *See*, *e.g.*, *id.* at 46 ("We construe the phrase 'a foot disposed at the distal end of the accordion' as recited in claim 9 of the '031 patent in accordance with its plain and ordinary meaning, i.e., 'a structure located at the distal portion of the accordion.' . . . As shown in the annotated figure, below, the article at issue includes a structure located at the distal portion of the accordion.").

338.    Mr. Steuart also regulates the course of a hearing, as well as the conduct of parties and counsel. *See Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018).

339.    For example, in an administrative ruling proceeding, Mr. Steuart advised the parties that he had "revised the procedural schedule to provide additional time for [the patent owner's] sur-reply." Cust. & Border Prot. Dec. No. H297262, at 3 (Aug. 9, 2018).

340.    As another example, Mr. Steuart determined whether a person or entity may participate as a party to an "inter partes proceeding," based on whether it has a "direct and demonstrable interest in the question presented by the ruling request." *See*, *e.g.*, *id.* at 2.

341.    As yet another example, Mr. Steuart declared that the "[r]epresentatives from [importer's] co-respondents in" the underlying Commission investigation "observed the oral argument portion of this proceeding." Cust. & Border Prot. Dec. No. H292490, at 1 n.1 (Mar. 5, 2018).

342.    As yet another example, Mr. Steuart received evidence and examined witnesses at hearings. *See Lucia*, 138 S. Ct. at 2053.

343.    In one administrative ruling, Mr. Steuart's decision relied on an excerpt of a hearing transcript in which "Customs" asked a party, "have any of those cartridges gone through that prescreening of the roll process that you have described?" Cust. & Border Prot. Dec. No. H297262, at 7 n.2 (Aug. 9, 2018).

344.    In another administrative ruling, Mr. Steuart's decision relied on a lengthy quote of an admission of the patent holder's counsel during oral argument. Cust. & Border Prot. Dec. No. H292490, at 29 (Mar. 5, 2018).

345.    Upon information and belief, Mr. Steuart has applied his own prior decisions as precedent.

346.     In one *inter partes* administrative ruling, Mr. Steuart analyzed "whether [the patent holder]'s argument ha[d] been waived under Customs HQ Ruling H242025 (June 24, 2013)." Cust. & Border Prot. Dec. No. H288282, at 23 (Sept. 20, 2017); *see also* Cust. & Border Prot. Dec. No. H284032 (Apr. 7, 2017).

347.     In that same ruling, Mr. Steuart concluded that, under the analogy of that case, the argument was waived. Cust. & Border Prot. Dec. No. H288282, at 23 (Sept. 20, 2017); *see also* Cust. & Border Prot. Dec. No. H284032 (Apr. 7, 2017) (applying the same H242025 decision as precedent to refuse consideration of patent holder's infringement arguments in an *inter partes* administrative ruling proceeding).

348.      In the course of carrying out these important administrative functions, Mr. Steuart exercises significant discretion. *See Lucia*, 138 S. Ct. at 2052.

349.     Mr. Steuart also regularly holds adversarial administrative ruling proceedings purportedly under 19 C.F.R. § 177.

350.     Those administrative ruling proceedings are governed by procedural schedules and include briefing, submissions of evidence, and oral arguments.

351.     19 C.F.R. § 177 does not provide for adversarial proceedings.

352.     On information and belief, Defendants introduced adversarial proceedings regarding prospective transactions for enforcement of Section 337 exclusion orders.

353.     On information and belief, no other branch of Customs conducts adversarial proceedings with respect to prospective transactions.

354.     Inferior officers are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.

355.     Mr. Steuart acts as a *principal* officer of the United States.

356.    19 C.F.R. §151.16(e), which describes Customs' detention of merchandise, refers to admissibility determinations for detained merchandise as "final determinations," indicating that the signatory thereby issues a binding decision, without the approval of any higher authority.

357.    Customs' regulations provide little disclosure or procedures on the enforcement of exclusion orders.

358.    On information and belief, the only place where such procedures are available to the public is a Government Accountability Office report on Customs procedures for enforcing exclusion orders. GAO Report 15-78, U.S. Customs and Border Protection Could Better Manage Its Process to Enforce Exclusion Orders (Nov. 2014), *available at* https://www.gao.gov/assets/670/667074.pdf.

359.    The GAO Report specifies that when Customs receives an exclusion order from the Commission, the IPR Branch handles enforcement at the ports and through prospective adjudications. GAO Report at 9.

360.    The GAO Report specifies that the IPR Branch creates trade alerts with enforcement instructions for port officials. *Id.* at 12.

361.    The GAO Report specifies that then "sometimes" the Center of Excellence and Expertise for the relevant industry provides technical assistance. *Id.*

362.    The GAO Report specifies that then the trade alert "triggers CBP's enforcement at the ports." *Id.*

363.    The GAO Report specifies that port officials identify and examine shipments to determine whether they are covered by an exclusion order, "frequently seek[ing] guidance from IPR Branch officials" to make such determinations. *Id.* at 15.

364.    The GAO Report specifies that if a product is determined to be covered by an exclusion order, then the port officials exclude the shipment. *Id.* at 16.

365.    On information and belief, none of these procedures, as described in the GAO report, are specified by statute or regulation.

366.    On information and belief, none of these procedures, as described in the GAO report, were established through a Notice-and-Comment rulemaking proceeding.

367.    The regulations specify that the importer may file a protest against the exclusion, either at the port of entry or electronically, and that the "Center director shall review and act on a protest" related to the exclusion of merchandise. 19 C.F.R. §§ 174.11(b)(4), 174.12(d), 174.21(b).

368.    On information and belief, in practice, the protest rulings are issued by Mr. Steuart and are addressed to Directors of the Centers of Excellence. *See, e.g.*, H300129, Protest 160118100231, USITC Inv. No. 337-TA-1016 (Sept. 7, 2018).

369.    On information and belief, the Directors of the Centers of Excellence simply forward Mr. Steuart's decision to the importer. *See id.*

370.    If Customs denies the protest or fails to grant the protest within thirty days, the importer may appeal to the Court of International Trade. 19 C.F.R. §§ 174.21(b), 174.31.

371.    Under either circumstance (i.e., denial of protest *or* failure to grant protest), the decision of Mr. Steuart is the agency's final decision.

372.    Alternatively, the importer "may seek further review of a protest in lieu of review by the Center director by filing" an application for further review. 19 C.F.R. § 174.23.

373.    If the Center director believes that the protest should be denied, he must forward it for further consideration under 19 C.F.R. § 174.26.

374.    Only protests that meet specific criteria go to "the Commissioner of Customs or his designee under Customs Delegation Order No. 1 (Revision 1) . . . as amended from time to time." 19 C.F.R. § 174.26(b)(1).

375.    The Delegation Order is found at 34 Fed. Reg. 8208 (May 27, 1969).

376.    The Delegation Order does not address further review for protests or applications.

377.    To achieve attention from the Commissioner of Customs or his delegate, the application for further review must raise an issue of non-uniform treatment, established practice, interpretation of a court decision or Commissioner of Customs ruling, or a novel question. 19 C.F.R. § 174.26(b)(1).

378.    The Center director designates an individual to decide the protest that was not involved in the exclusion decision. 19 C.F.R. § 174.26(b)(2).

379.    On information and belief, Customs does not follow these procedures.

380.    On information and belief, if the application for further review involves an exclusion order, then Mr. Steuart will decide it. *See*, *e.g.*, H283478, Protest No. 2720-16-100577, USITC Inv. No. 337-TA-691 (June 26, 2017); H283359, Protest No. 2704-16-101751, USITC Inv. Nos. 337-TA-565, -691, -946 (Apr. 21, 2017); H282919, Protest No. 2704-17-101966, USITC Inv. No. 337-TA-723 (Feb. 21, 2017).

381.    The decisions of Mr. Steuart on applications for further review do not contain any analysis or findings regarding the four factors in 19 C.F.R. § 174.26(b)(1).

382.    There is no meaningful opportunity for review of Mr. Steuart's decisions within Customs.

383.    Accordingly, Mr. Steuart acts as a principal officer of the United States.

384.    Mr. Steuart was not appointed by the President and confirmed by the Senate.

385.    Accordingly, Mr. Steuart's actions violate the Appointments Clause of the U.S. Constitution.

386.    No statute authorizes Mr. Steuart's appointment by any head of department.

387.    Such an appointment would violate the Appointments Clause of the U.S. Constitution.

388.    On information and belief, Customs has stated, without support, that "all of the Secretary of the Treasury's authority pursuant to 19 U.S.C. 1623(a) was transferred and/or delegated to the DHS Secretary who then appropriately delegated it to the Commissioner of Customs, who may re-delegate it further within Customs." 80 Fed. Reg. 70154, 70156 (Nov. 13, 2015).

389.    The Commissioner of Customs cannot appoint inferior officers.

390.    This remains true even if (1) all of the delegations and re-delegations discussed above had occurred, (2) the delegations included the Secretary of the Treasury's authority under 19 U.S.C. § 1337, and (3) there was statutory authority for the delegations and re-delegations,

391.    Appointment power may only be vested in the head of a department.

392.    The term "head of a department" refers to cabinet-level departments.

393.    The term "head of a department" does not include heads of sub-agencies such as inferior commissioners and bureau officers. *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 886 (1991); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 511 (2010) ("Because the Commission is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component, it constitutes a 'Department' for the purposes of the Appointments Clause.").

394.    The Commissioner is the head of U.S. Customs and Border Protection.

395.    Customs is not a cabinet-level agency.

396.    Customs is an agency established within the Department of Homeland Security. *See* 6 U.S.C. § 211.

397.    Mr. Porras is not a validly appointed officer of the United States.

398.    As Mr. Steuart is not a validly appointed principal officer of the United States, he cannot supervise or direct the work of Mr. Porras as an inferior officer.

399.    The Commissioner of Customs may not appoint Mr. Porras as an inferior officer for the same reason that he may not appoint Mr. Steuart.

400.    Accordingly, Mr. Porras's actions violate the Appointments Clause of the U.S. Constitution.

401.    As discussed above, Wirtgen has exhausted all of its available administrative remedies and pursuit of any further administrative remedies is futile.

402.    Customs' decisions, dated December 17, 2019 and December 27, 2019, should be vacated and set aside as violating the Appointments Clause of the U.S. Constitution.

403.    Defendants should also be enjoined from further seeking to interpret the patent laws of the United States.

## COUNT III: VIOLATION OF PROCEDURAL DUE PROCESS (U.S. CONST., AM. 5)

404.    Wirtgen incorporates by reference the allegations set forth in paragraphs 1–403 above, as if fully set forth herein.

405.    Defendants' actions, in requiring Wirtgen to prove "as a condition of entry" that its unadjudicated milling machines "do not infringe claim 19," are a violation of Wirtgen's procedural due process rights.

406.    The burden to prove infringement never shifts to the alleged infringer if the charge is denied in the plea or answer. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198-99 (2014), *citing Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1880).

407.    Wirtgen has consistently denied that any of its milling machines infringe claim 19 of the '693 patent.

408.   Wirtgen proactively provided Customs with extensive evidence showing that.

409.   Customs placed the burden of proof on Wirtgen to prove non-infringement.

410.   Customs' improper allocation of the burden of proof violated Wirtgen's procedural due process rights.

411.   Upon detaining the machines, Customs did not notify Wirtgen of "the specific reason for the detention" as required by 19 U.S.C. § 1499(c)(2).

412.   Upon detaining machines in Brunswick, Customs sent a generic form that identified the reason as "import specialist review."

413.   Upon detaining machines in Baltimore, Customs sent a form that identified the reason as "[t]he exclusion order states machines with a serial number above 18101069 may be subject to refusal."

414.   Customs ignored Wirtgen's offer to send a technician to the port to demonstrate the non-infringing operation of the machines.

415.   Customs excluded Wirtgen's machines because the serial numbers and model names of those machines were not identical to that of the machine for which Wirtgen submitted evidence.

416.   Wirtgen provided annotated photographs showing how to distinguish the machines found to infringe from the machines that do not.

417.   Customs ignored those annotated photographs.

418.   Upon information and belief, Customs did not physically examine the machines before excluding them.

419.   For this reason, the burden of proof is a substantive aspect of a claim.

420.   Customs' unlawful shifting of the burden of proof led to the corruption of its entire exclusion procedure.

421.   The actions of Customs are arbitrary, capricious, and contrary to law.

422.   The actions of Customs have deprived Wirtgen—without due process of law—of its legitimate property interest in importing and selling its lawful products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.   Issue an Order granting injunctive relief in favor of Wirtgen and against Defendants that:

    1.   compels Defendants to permit entry of Wirtgen's Redesigned 1810 Series machines into the United States immediately;

    2.   bars Defendants from detaining, excluding, or seizing any Wirtgen machine not adjudicated by the Commission to infringe claim 19 of the '693 patent;

    3.   compels Defendants to vacate the two exclusion decisions issued by Customs against Wirtgen on December 17, 2019; and

    4.   compels Defendants to vacate the exclusion decision issued by Customs against Wirtgen on December 27, 2019.

B.   Issue an order declaring:

    1.   that the two exclusion decisions issued by Customs against Wirtgen on December 17, 2019, are void;

    2.   that the exclusion decision issued by Customs against Wirtgen on December 27, 2019, is void;

    3.   that the LEO covers only those machines that the Commission determined to infringe claim 19 of the '693 patent;

4.      that the LEO does not permit Defendants to place the burden of proof on Wirtgen regarding the admissibility of any imports;

5.      that availability of the LEO's certification provision is not limited to products that have previously been adjudicated by Customs or the Commission to be outside the scope of the LEO;

6.      that Defendant Charles Steuart is not a constitutionally appointed officer authorized to interpret the patent laws of the United States;

7.      that Defendant Juan J. Porras is not a constitutionally appointed officer authorized to interpret the patent laws of the United States; and

8.      that Wirtgen's certification, which Customs rejected, satisfies the certification provision of the LEO.

C.     Grant such other and further relief as the nature of the case may admit or require, declaratory and injunctive relief requested above, and any such other relief as may be deemed just and equitable by this Court.

Date: January 24, 2020

Respectfully submitted,

_____

Daniel E. Yonan (D.C. Bar No. 473390)
Michael E. Joffre (D.C. Bar No. 497813)
Donald R. Banowit (D.C. Bar No. 463976)
Kristina Caggiano Kelly (D.C. Bar No. 1000854)
Ralph W. Powers III (pro hac vice pending)
Dallin Glenn (pro hac vice pending)
STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
dyonan@sternekessler.com
mjoffre@sternekessler.com
dbanowit@sternekessler.com
kckelly@sternekessler.com
tpowers@sternekessler.com
dglenn@sternekessler.com

Ryan D. Levy (*pro hac vice* pending)
Seth R. Ogden (*pro hac vice* pending)
PATTERSON INTELLECTUAL PROPERTY LAW, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone No.: (615) 242-2400
Facsimile No.: (615) 242-2221
rdl@iplawgroup.com
sro@iplawgroup.com

*Counsel for Plaintiff Wirtgen America, Inc.*