# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WIRTGEN AMERICA, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES OF AMERICA,<br><br>DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528,<br><br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>CHAD F. WOLF,<br>DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528,<br><br>MARK A. MORGAN,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>JUAN J. PORRAS,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>CHARLES STEUART,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229,<br><br>       Defendants. | Civil Action No. 20-cv-195 (CRC)<br><br>**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER <u>JURISDICTION</u>** |

## DEFENDANTS' MOTION TO DISMISS

Defendants, United States *et. al*., pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure, move to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the

grounds set forth in the memorandum accompanying this motion.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ William Chang         /s/ Patricia M. McCarthy

By: WILLIAM CHANG       PATRICIA M. MCCARTHY
  D.C. Bar No. 1030057       JUSTIN R. MILLER
  Assistant United States Attorney   Assistant Directors
  District of Columbia
  555 4th Street N.W.
  Washington, DC 20530      /s/ Jason M. Kenner
  Telephone: (202) 252-2510     JASON M. KENNER
  William.chang2@usdoj.gov     EDWARD F. KENNY
               MARCELLA POWELL
               Senior Trial Counsel
               GUY EDDON
               Trial Attorney
               U.S. Dept. of Justice, Civil Division
               International Trade Field Office
               26 Federal Plaza – Suite 346
               New York, NY 10278
               Telephone: (212) 264-9241
               Fax: (212) 264-1916

  January 31, 2020        ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WIRTGEN AMERICA, INC., | |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528, | |
| U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229, | |
| CHAD F. WOLF,<br>DEPARTMENT OF HOMELAND SECURITY,<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528, | Civil Action No. 20-cv-195 (CRC)<br><br>**DEFENDANTS' TABLE OF CONTENTS AND <u>AUTHORITIES</u>** |
| MARK A. MORGAN,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229, | |
| JUAN J. PORRAS,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229, | |
| CHARLES STEUART,<br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20229, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

BACKGROUND ............................................................................................................. 3

    I.      THE LAW PROTECTING DOMESTIC PATENT HOLDERS ................................ 3

    II.    STATEMENT OF THE CASE .................................................................. 5

SUMMARY OF THE ARGUMENT ............................................................................. 10

ARGUMENT .............................................................................................................. 10

    I.      STANDARD OF REVIEW ................................................................... 10

    II.    THE COURT LACKS SUBJECT-MATTER JURISDICTION TO ENTERTAIN
          WIRTGEN'S COMPLAINT ................................................................. 12

        A.  Congress's Intent Is Fairly Discernible In The Section 337 Statutory Scheme ... 14

        B.  Wirtgen's Claims Are The Type Congress Intended To Be Reviewed In The
            Statutory Scheme ................................................................. 17

## TABLE OF AUTHORITIES

### Cases

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
  808 F.2d 1471 (Fed. Cir. 1986).................................................................... 3

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ................................................................. 11

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)................................................................................... 11

*Automated Merchandising Sys. v. Lee*,
  782 F.3d 1376 (Fed. Cir. 2015).................................................................. 17

*Basso v. Utah Power & Light Co.*,
  495 F.2d 906 (10th Cir. 1974) ................................................................... 11

*Block v. Community Nutrition Inst.*,
  467 U.S. 340 (1984)................................................................................... 13

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ................................................................... 11

*Corning Gilbert Inc. v. United States*,
  896 F. Supp. 2d 1281 (Ct. Int'l Trade 2013) ............................................. 17

*Crucible Materials Corp. v. ITC*,
  127 F.3d 1057 (Fed. Cir. 1997)................................................................... 5

*Elgin v. Department of Treasury*,
  567 U.S. 1 (2012).................................................................................. 12, 13

*Fuji Photo Film Co., Ltd. v. U.S. Int'l Trade Comm'n*,
  474 F.3d 1281 (Fed. Cir. 2007)............................................................. 3, 15

*Gunn v. Minton*,
  133 S. Ct. 1059 (2013).............................................................................. 10

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)..................................................................................... 11

*Hyundai Elecs. Indus. Co. v. USITC*,
  899 F.2d 1204 (Fed. Cir. 1990)................................................................... 5

*James Madison Ltd. by Hecht v. Ludwig*,

82 F.3d 1085 (D.C. Cir. 1996) ............................................................................... 11

*Jarkesy v. SEC,*
803 F.3d 9 (D.C. Cir. 2015) ................................................................... 14, 17, 19

*Jazz Photo Corp. v. United States,*
439 F.3d 1344 (Fed. Cir. 2006) ....................................................................... 17

*Lewis v. Casey,*
518 U.S. 343 (1996) ......................................................................................... 17

*Moms Against Mercury v. FDA,*
483 F.3d 824 (D.C. Cir. 2007) ........................................................................ 11

*NetworkIP, LLC v. FCC,*
548 F.3d 116 (D.C. Cir. 2008) ........................................................................ 11

*Ninestar v. International Trade Commission,*
667 F.3d 1373 (Fed. Cir. 2012) ......................................................................... 3

*One World Techs., Inc. v. United States,*
No. 1:18-cv-00200 (Ct. Int'l Trade) ................................................................ 17

*Sealed Air. Corp. v. ITC,*
645 F.2d 976 (C.C.P.A. 1981) ........................................................................... 5

*Settles v. U.S. Parole Comm'n,*
429 F.3d 1098 (D.C. Cir. 2005) ...................................................................... 11

*Suprema, Inc. v. Int'l Trade Comm'n,*
796 F.3d 1338 (Fed. Cir. 2015) ......................................................................... 3

*Telecomms. Res. & Action Ctr. v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) .......................................................................... 12

*Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016) ............................................................. 19

*Thunder Basin Coal Co. v. Reich,*
510 U.S. 200 (1994) .......................................................... 2, 12, 13, 14, 17, 19

*Yingbin-Nature (Guangdong) Wood Indus. Co. v. U.S. Int'l Trade Comm'n,*
535 F.3d 1322 (Fed. Cir. 2008) ...................................................................... 15

**Statutes, Regulations, Rules, and the Constitution**

U.S. Const. Art. II, sec. 2, cl. 2 ................................................................................. 9

5 U.S.C. § 706 .................................................................................................................. 4

6 U.S.C. § 212 .................................................................................................................. 4

6 U.S.C. § 215 .................................................................................................................. 4

19 U.S.C. § 1337 .............................................................. 1, 2, 4, 5, 9, 14, 15, 16, 18

19 U.S.C. § 1337(a)(1)(B)(i) ................................................................................... 3, 15

19 U.S.C. § 1337(b)(1) .............................................................................................. 15

19 U.S.C. § 1337(b)(2) .............................................................................................. 15

19 U.S.C. § 1337(c) .......................................................................... 1, 2, 3, 4, 14

19 U.S.C. § 1337(d) ..................................................................................................... 3

19 U.S.C. § 1337(i) ................................................................................................ 3, 15

19 U.S.C. § 1337(k) ...................................................................... 1, 2, 3, 8, 15

19 U.S.C. § 1337(k)(2) .......................................................................................... 4, 16

19 U.S.C. § 1401(i) ....................................................................................................... 4

28 U.S.C. § 1331 .......................................................................................................... 12

28 U.S.C. § 1581(a) ..................................................................................................... 17

28 U.S.C. § 1581(i) ...................................................................................................... 17

19 C.F.R. pt. 0 ................................................................................................................ 4

19 C.F.R. § 210.76 ................................................................................................... 9, 18

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1, 11

**Congressional Materials**

H.R. Rep. No. 96-1235 (1980) ................................................................................. 16

S. Rep. No. 96-466 (1979) ........................................................................................ 16

*Hearing Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary*, 96th Cong. 25 (1979) ..............................................................................16

## Administrative Determinations

*Certain Road Construction Machines and Components Thereof*,
   Inv. No. 337-TA-1088, (*instituted* Nov. 29, 2017)......................................................1, 6, 7, 8

*Certain Road Construction Machines and Components Thereof*,
   Limited Exclusion Order, No. 337-TA-1088 (June 27, 2019)........................................6, 7, 18

## Other Authorities

85 Fed. Reg. 3,944 (Int'l Trade Comm'n Jan. 23, 2020)............................................................18

Customs Directive No. 2310-006A (Dec. 16, 1999) ....................................................................4

U.S. Int'l Trade Comm'n, Glossary, https://www.usitc.gov/glossary.htm....................................6

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WIRTGEN AMERICA, INC.,

       Plaintiff,

         v.

UNITED STATES OF AMERICA,

DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, S.W.
Washington, D.C. 20528,

U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229,

CHAD F. WOLF,
DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane, S.W.
Washington, D.C. 20528,

MARK A. MORGAN,
U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229,

JUAN J. PORRAS,
U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229,

CHARLES STEUART,
U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Avenue, N.W.
Washington, D.C. 20229,

       Defendants.

Civil Action No. 20-cv-195 (CRC)

**DEFENDANTS'
MEMORANDUM IN SUPPORT
OF THEIR MOTION TO
DISMISS FOR LACK OF
SUBJECT MATTER
<u>JURISDICTION</u>**

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>

Defendants, the United States *et al.*, (Federal defendants),[1] respectfully submit this

memorandum in support of their motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure to dismiss plaintiff's complaint for lack of subject matter jurisdiction.

Plaintiff, Wirtgen America, Inc. (Wirtgen), commenced this action to challenge the

exclusion by U.S. Customs and Border Protection (CBP) of certain models of Wirtgen's road

construction machines pursuant to the U.S. International Trade Commission's (the Commission)

limited exclusion order, issued subsequent to an investigation conducted by the Commission

(Investigation No. 337-TA-1088) under 19 U.S.C. § 1337.  The Commission issued the limited

exclusion order after it found a section 1337 violation based on patent infringement by Wirtgen's

series 1810 milling machines.  The owner of the patent is Caterpillar Paving Products, Inc.

(Caterpillar Inc. and Caterpillar Paving Products, Inc. were the "domestic industry").  Wirtgen

alleges that the excluded machines were redesigned and therefore not within the scope of the

limited exclusion order, and, in any event, the CBP officials who enforced the order did not have

authority to do so.

Wirtgen's sole remedy, however, is to appeal the limited exclusion order to the United

States Court of Appeals for the Federal Circuit, pursuant to section 1337(c), and/or to seek a

modification of the limited exclusion order from the Commission, pursuant to section 1337(k),

which is itself appealable to the Federal Circuit.  Currently, Wirtgen is pursuing both avenues of

---

[1]  Plaintiff asserts claims against Mr. Juan J. Porras and Mr. Charles Steuart in their official capacities.  Plaintiff's official-capacity claims against these Defendants do not constitute claims against them, but rather claims against the United States as the real party in interest, *see, e.g.*, *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 23-24 (D.D.C. 2007) (citing cases), and thus should be dismissed for the reasons set forth as to all Defendants herein.

review.  Wirtgen's appeal of the Commission's limited exclusion order is pending before the Federal Circuit, and on January 16, 2020, the Commission instituted a modification proceeding to evaluate the validity of Wirtgen's redesign.

Furthermore, on January 30, 2020, Wirtgen filed *Wirtgen America, Inc., v. United States et. al.*, Court No. 20-0027, in the Court of International Trade seeking, among other relief, an order declaring that Wirtgen's redesigned machines do not violate claim 19 of Caterpillar Paving Product's patent and the release of the six road construction machines at issue in this action.

Wirtgen now seeks to impermissibly bypass the statutorily provided avenues of administrative and judicial review by seeking a restraining order and injunction from this Court, rather than waiting for clarification of the limited exclusion order from the Commission or the conclusion of its appeal before the Federal Circuit.  19 U.S.C. §§ 1337(c) and (k).  The comprehensive statutory scheme enacted by Congress, however, which provides Wirtgen with avenues to have its challenges adjudicated, precludes this Court's exercise of subject-matter jurisdiction in this case.  *See, e.g., Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (holding that, when a statute provides for direct appellate review "of final agency actions, [courts] shall find that Congress has allocated initial review to an administrative body where such intent is 'fairly discernible in the statutory scheme'"); *Exela Pharma Scis., LLC v. Lee*, 781 F.3d 1349, 1353 (Fed. Cir. 2015) (per curiam) (holding that "third party challenge of USPTO revival rulings under the [Administrative Procedure Act (APA)] is not legislatively intended"); *Pregis Corp. v. Kappos,* 700 F.3d 1348, 1357-59 (Fed. Cir. 2012) (holding that the Patent Act's "intricate scheme for administrative and judicial review of USPTO patentability determinations . . . evinces a clear Congressional intent to preclude actions under the APA").

Accordingly, Defendants respectfully request that this Court dismiss this action in its entirety for lack of subject-matter jurisdiction, as explained in detail below.

## BACKGROUND

## I.   THE LAW PROTECTING DOMESTIC INDUSTRY

Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C § 1337, is a trade statute enacted to protect American industry from unfair trade practices occurring overseas.  *See e.g.*, *Ninestar v. International Trade Commission*, 667 F.3d 1373, 1384 (Fed. Cir. 2012) (*quoting Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1488 (Fed. Cir. 1986) ("[a]lthough it is true that private rights may be affected by section 337 determinations, the thrust of the statute is directed toward the protection of the public interest from unfair trade practices in international commerce."); *see also*, *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1350 (Fed. Cir. 2015) (*en banc*) ("[t]he legislative history consistently evidences Congressional intent to vest the Commission with broad enforcement authority to remedy unfair trade acts.").  Specifically, section 337 prohibits "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation . . . of articles" that "infringe a valid and enforceable United States patent."  19 U.S.C. § 1337(a)(1)(B)(i).

Congress charged the Commission with investigating and making a determination whether or not there is a violation of section 337.  At the conclusion of an investigation, the Commission determines whether a violation of section 337 has occurred.  A determination that results in an exclusion order must "be made on the record after notice and opportunity for a hearing," at which "[a]ll legal and equitable defenses may be presented."  *Id*. § 1337(c).

The Commission generally issues one of two types of exclusion orders: (1) a limited exclusion order or (2) a general exclusion order.  *See Fuji Photo Film Co., Ltd. v. U.S. Int'l*

*Trade Comm'n*, 474 F.3d 1281, 1286 (Fed. Cir. 2007). "A limited exclusion order is 'limited' in that it only applies to the specific parties before the Commission in the investigation. In contrast, a general exclusion order bars the importation of infringing products by everyone, regardless of whether they were respondents in the Commission's investigation." *Id*. The Commission may also order "that any article imported in violation of" section 337 "be seized and forfeited to the United States" if certain conditions are met. 19 U.S.C. § 1337(i).

The Commission does not itself enforce its exclusion or its seizure and forfeiture orders, but, rather, directs CBP to exclude from entry into the United States, merchandise that is subject to a section 337 exclusion order. *See* 19 U.S.C. § 1337(d) ("The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry."); 19 U.S.C § 1401(i); 6 U.S.C §§ 212 & 215; *see* 6 U.S.C. § 212; 19 C.F.R. pt. 0; Customs Directive No. 2310-006A (Dec. 16, 1999). In addition, the Commission may issue an order under 19 U.S.C. § 1337(i) directing CBP to seize and forfeit articles attempting entry in violation of an exclusion order if their owner, importer, or consignee previously had articles denied entry on the basis of that exclusion order and received notice that seizure and forfeiture would result from any future attempt to enter articles subject to the same.

CBP will continue to enforce an exclusion order until the Commission finds "that the conditions which led to such exclusion from entry no longer exist." 19 U.S.C § 1337(k). Consequently, an adjudged infringer may seek a modification or rescission of an exclusion order or a seizure and forfeiture order on the ground that it "is no longer" violating the statute, such as in the instance of a redesign. *See id*. § 1337(k)(2). Section 337 specifies that, in these administrative proceedings, the "burden of proof . . . shall be on the petitioner." *Id*.; *See, e.g.,*

*Hyundai Elecs. Indus. Co. v. Int'l Trade Comm'n*, 899 F.2d 1204, 1210 (Fed. Cir. 1990) (stating that the issuance of an exclusion order "effectively shifts to would-be importers of potentially infringing articles, as a condition of entry, the burden of establishing noninfringement."); *see also Sealed Air Corp. v. ITC*, 645 F.2d 976, 985–89 (C.C.P.A. 1981).  Both the patent holder and the infringer are parties to a modification proceeding.

Section 337 also provides for judicial review.  "Any person adversely affected by a final determination of the Commission" has sixty days to appeal the Commission's determination to the Federal Circuit.  19 U.S.C. § 1337(c).  The outcome of a modification or rescission proceeding is likewise subject to direct review in the Federal Circuit.  *Crucible Materials Corp. v. ITC*, 127 F.3d 1057, 1061 (Fed. Cir. 1997).  The Federal Circuit has exclusive jurisdiction to entertain such appeals, and reviews the Commission's orders under the standards prescribed by the Administrative Procedure Act (APA), 5 U.S.C. §706.  *See id.*

## II.   STATEMENT OF THE CASE

Wirtgen alleges that it is the exclusive United States distributor for products of the Wirtgen Group companies, including Wirtgen-brand milling, recycling, and paving machines, Vogele-brand asphalt paving machines, Hamm-brand rollers, and Kleemann-brand rock crushing machines.  Compl. at ¶ 139.  At issue in this case are certain road milling machinery.  Compl. at ¶ 4.  Wirtgen's road milling machines are large construction machines that grind the top layer of old pavement from a road to prepare for a new layer of pavement to be applied.  Compl. at ¶ 5.

This action stems from the Commission's investigation into Wirtgen's unfair methods of competition and unfair acts in the importation of articles into the United States pursuant to 19 U.S.C. §1337.  Specifically, in November 2017, Caterpillar Inc. and Caterpillar Paving Products, Inc. filed a complaint before the Commission alleging, among other things, that certain models

of Wirtgen's road construction machines infringe U.S. Patent No. 7,140,693 (the '693 patent).
*See* Investigation No. 337-TA-1088, *Certain Road Construction Machines and Components Thereof (instituted* Nov. 29, 2017).  Compl. at ¶ 169.

The Commission's administrative law judge conducted an evidentiary hearing on September 25 and 26, 2018, and issued a Final Initial Determination (FID) finding a violation of section 337 on February 14, 2019.  Compl. at ¶ 170.  In the FID, the administrative law judge determined that Wirtgen's W 100 CFi, W 120 CFi, and W 130 CFi road construction machines (collectively, the 1810 Series machines) infringed claim 19 of the '693 patent.  Compl. at ¶ 173.

The administrative law judge recommended that the Commission issue a limited exclusion order against Wirtgen covering the infringing products.  Compl. at ¶ 175.  A limited exclusion order "bars the importation of products by specific respondents determined by the Commission to be violating section 337."  *See* https://www.usitc.gov/glossary.htm.  The Commission affirmed the administrative law judge's determination in relevant part and issued a limited exclusion order.[2]  Compl. at ¶ 177.

The operative paragraph of the June 27, 2019 limited exclusion order, bars the following merchandise:

> Road construction machines and components thereof that infringe claim 19 of the '693 patent that are manufactured abroad by or on behalf of, or are imported by or on behalf of, the Respondents or any of their affiliated companies, parents, subsidiaries, agents, or other related business entities, or their successors or assigns, are excluded from entry for consumption into the United States, entry for consumption from a foreign-trade zone, or withdrawal from a warehouse for consumption, for the remaining term of the '693 patent, except under license of the patent owner or as provided by law, and except for service or repair components imported for use

---

[2]  Wirtgen appealed the Commission's decision to the Federal Circuit, and that appeal remains pending.  Compl. at ¶ 178.

> in servicing or repairing road construction machines that were
> imported prior to the effective date of this Order.

*See* Limited Exclusion Order, Inv. No. 337-TA-1088, Pl. TRO Ex. 14.

Exclusion orders issued by the ITC are sent to the President for review. During the sixty day review period, if the order is not disapproved by the President or if the President affirmatively approves the order during this period, the order becomes final. Here, the limited exclusion order became final after the expiration of the sixty-day review period. On August 23, 2019, Wirtgen appealed the final limited exclusion order in the Federal Circuit. That appeal is currently pending.

During the course of the Commission's investigation (Inv. No. 337-TA-1088), Wirtgen alleges to have redesigned its Series 1810 road construction machines. Compl. at ¶ 179. The redesigned Series 1810 road construction machines were allegedly not before the Commission in the investigation and therefore not adjudicated. Compl. at ¶¶ 185-186. The Redesigned 1810 Series machines bear serial numbers designating them as 1810 Series machines but with new branding identifications including "W 100 XFi," "W 100 XTi," "W 120 XFi," "W 120 XTi," "W 130 XFi," and "W 130 XTi." Compl. at ¶¶ 191–97.

The Commission transmitted notice of the limited exclusion order to CBP. Compl. at ¶ 202. Notwithstanding the limited exclusion order and without requesting that either the Commission or CBP evaluate the redesigned version of the infringing 1810 Series machines, Wirtgen proceeded to import the redesigned 1810 Series machines. In or about September 2019, Wirtgen's counsel informed CBP that Wirtgen would soon import, at the port of Baltimore, Maryland, the first redesigned 1810 Series machine and that the machines did not fall within the scope of the limited exclusion order. Compl. at ¶ 219. Pursuant to 19 C.F.R part 177, importers can request and receive advisory rulings from CBP. CBP advised Wirtgen that it should pursue

an advisory ruling by CBP or a modification proceeding at the Commission to determine whether the redesigned road construction machines fell within the scope of the limited exclusion order. Compl. at ¶¶ 92, 96.  Wirtgen declined.

Pursuant to the limited exclusion order, CBP detained and excluded several of Wirtgen's redesigned 1810 Series road milling machines.  On November 18, 2019, CBP detained two redesigned 1810 Series machines, a W 120 XFi having serial number 18101084 and a W120 XTi having serial number 18101086, at the port of Brunswick, Georgia.  Compl. at ¶¶ 235-36.  On November 21, 2019, CBP detained three more redesigned 1810 series machines, a W 120 XTi having serial number 18101088, a W120 XTi having serial number 18101089, and a W 120 XFi having serial number 18101092, at the port of Brunswick, Georgia.  Compl. at ¶¶ 237-238.  On December 17, 2019, CBP excluded these five detained Wirtgen's redesigned 1810 series machines.  Compl. at ¶ 239.  On December 27, 2019, CBP excluded a sixth redesigned 1810 series machine, a W 120 XFi having serial number 18101094.  Compl. at ¶ 240.  CBP issued notices of exclusion as is appropriate for these actions.  Compl. at ¶¶ 241-242.

On December 24, 2019, Wirtgen filed an administrative protest with CBP's Machinery Center of Excellence & Expertise (CEE), arguing that CBP's exclusions were unlawful.  Compl. at ¶ 113.  The CEE referred Wirtgen's protest to CBP's Headquarters.  On January 21, 2020, CBP advised Wirtgen that its challenge to the exclusion was not protestable because the exclusion arose from the Commission's limited exclusion order issued in Investigation No. 337-TA-1088 pursuant to section 337.  Compl. at ¶¶ 319-320, Pl. TRO Ex. 25 (HQ H308232).  Instead, and as noted in the limited exclusion order, Wirtgen's remedy is to seek a modification proceeding before the Commission as provided for in 19 U.S.C. § 1337(k).  19 C.F.R. § 210.76; Pl. TRO. Ex. 14.  *See* Pl. TRO Ex. 25 (HQ H308232) and Compl. at ¶ 319.

On January 16, 2020, the Commission determined, *sua sponte*, to initiate a modification proceeding.  Compl. at ¶ 97.  This modification proceeding will determine whether the limited exclusion order should be modified to exclude the Redesigned Series 1810 road construction machines.  Wirtgen also requested a stay of the limited exclusion order from both the Federal Circuit and the Commission.  After both fora denied its motions for a stay, Wirtgen renewed its requests.  Those requests are still pending.  Rather than await the conclusion of either the modification proceeding or its Federal Circuit appeal, Wirtgen now improperly seeks relief from this Court.

Wirtgen seeks an order from this Court setting aside CBP's exclusion of certain road constructions machines for three alternative reasons.  First, in Count I, Wirtgen alleges that the exclusion of its road construction machines should be set aside because the exclusion violated the Administrative Procedure Act.  Wirtgen alleges that the road construction machines were outside the scope of the limited exclusion order and CBP was unreasonable in determining otherwise.  Compl. at pp. 32-44.

In Count II of its complaint Wirtgen alleges that the exclusion should be set aside because it violated the Appointments Clause of the United States Constitution.  The Appointments Clause provides that inferior officers are to be appointed by "the President," the "Heads of Departments," or the "Courts of Law."  U.S. Const. Art. II, sec. 2, cl. 2.  Wirtgen claims that certain administrative decisions can only be made by a duly appointed inferior officer of the United States, and that in this case, the actions taken by two lower-level CBP officials (Mr. Charles Steuart and Mr. Juan Porras) violated the Appointments Clause because they are not duly appointed inferior officers.  Compl. at p. 34.

Finally, in Count III of its complaint, Wirtgen alleges the exclusion should be set aside because CBP's requirement that Wirtgen demonstrate that the redesigned road construction machines did not infringe, violated its procedural due process rights under the Constitution of the United States.  Compl. at pp. 43-45.  Like Count I, Count III challenges the scope of the limited exclusion order and presupposes the redesigned road construction machines were not included within its scope.

As demonstrated below, all three counts of the complaint should be dismissed for lack of subject-matter jurisdiction.

## SUMMARY OF THE ARGUMENT

Congress charged CBP with the responsibility to enforce exclusion orders issued by the Commission.  Here, the exclusion of Wirtgen's road construction machines was indisputably based on the Commission's limited exclusion order.  In section 337, Congress has set forth a comprehensive statutory scheme for hearing challenges to such exclusions.  The scheme includes a challenge before the Commission in a modification proceeding and/or appealing to the Federal Circuit.  The scheme does not, however, include commencing an action in a district court.  As Congress intended, Wirtgen's challenge to the scope of the limited exclusion order must be channeled back to the Commission and/or the Federal Circuit, and its complaint should be dismissed in its entirety.

## ARGUMENT

I.    **STANDARD OF REVIEW**

"'Federal courts are courts of limited jurisdiction,' with 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013).  Indeed, federal courts are "forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, "have an affirmative obligation 'to consider whether the

constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996).  Absent subject matter jurisdiction over a case, the Court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

When considering a motion to dismiss under Rule 12(b)(1), the Court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted).  However, the Court need not accept inferences drawn by Plaintiff if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Moreover, in evaluating subject matter jurisdiction, the Court, when necessary, may "'undertake an independent investigation to assure itself of its own subject matter jurisdiction'" and consider facts developed in the record beyond the complaint.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  The burden of establishing any jurisdictional facts to support subject matter jurisdiction rests on Plaintiff.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

Because Federal courts have limited jurisdiction, there is a presumption against jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When a court lacks jurisdiction, it must dismiss the proceeding.  A court may not entertain any claims without adequate jurisdictional basis.

II.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION TO ENTERTAIN WIRTGEN'S COMPLAINT**

The complaint purports to challenge CBP's exclusion of Wirtgen's redesigned road construction machines by application of a limited exclusion order.  Wirtgen challenges the exclusion, arguing that the redesigned machines fall outside of the limited exclusion order and that the exclusion was effectuated by CBP personnel who lacked the requisite authority.  District courts generally possess jurisdiction over "all actions arising under the Constitution, laws, or treatises of the United States."  *See* 28 U.S.C. § 1331.  However, where Congress has channeled judicial review through a statutory scheme of administrative review followed by direct review in a federal appellate court, district court jurisdiction is pre-empted.  Channeling serves several "compelling policy reasons"—including the appellate courts' "develop[ment of] expertise concerning the agencies assigned them for review," the "promot[ion of] judicial economy and fairness to the litigants by taking advantage of that expertise," and the "eliminat[ion of] duplicative and potentially conflicting review, and the delay and expense incidental thereto."  *Telecomms. Res. & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984) (citation omitted).

As to the jurisdiction of Federal district courts, two Supreme Court decisions establish the pertinent law concerning subject matter jurisdiction and channeling, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012).  The statutory scheme under consideration in *Thunder Basin* was the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), which was enacted to '"protect the health and safety of the Nation's coal or other miners.'"  *Thunder Basin* 510 U.S. at 202.  Violations of the Mine Act could be met with various sanctions and penalties.  *Id*. at 203.  The Mine Act created a comprehensive scheme for reviewing and challenging assessed penalties such that mine

operators could challenge the assessed violation to an administrative body whose decision could then be appealed to an appropriate Court of Appeals. *Id*. at 208.

One of the requirements under the Mine Act was for the Secretary of Labor or its agent to conduct random inspections of mines. *Id* at 202-03. Mining companies were required to designate and post the identity of company representatives to accompany the inspectors and participate in post inspection discussions. *Id* at 203-04. *Id*. Thunder Basin Coal Company operated a non-union mine. *Id*. at 204. Although it designated the required representatives, it did not post the identity of these individuals as required by the Act. *Id*. Prior to being penalized under the Mine Act, Thunder Basin challenged the Mine Act's requirement to post the identity of the representatives in the district court as having violated Thunder Basin's rights under the National Labor Relations Act. *Id*. at 205. Thunder Basin sought and received an injunction in the district court, but the court of appeals reversed, holding that "the Mine Act's comprehensive enforcement and administrative review scheme precluded district court jurisdiction over petitioner's claims." *Id*. The Supreme Court agreed and held that Congress had channeled enforcement proceedings concerning the Mine Act to the Federal Mine Safety Commission, not the district courts. *Id.* at 214. The Supreme Court explained that to determine whether Congress has channeled review, no express or even heightened showing of congressional intent is required. Congress's intent need only be "'fairly discernible in the statutory scheme.'" *Id.* at 207 (*quoting Block v. Community Nutrition Inst*., 467 U.S. 340, 351 (1984)).

Similarly, in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), the Supreme Court held that district courts lack jurisdiction to entertain certain Merit Systems Protection Board claims that are appealable from that board directly to the Federal Circuit. *Id.* at 10. The Court rejected an attempt by the plaintiffs—Federal employees who were terminated for failing to register for

the selective service—to challenge the constitutionality of their termination without proceeding through the administrative process established in the Civil Service Reform Act (CSRA). 567 U.S. at 6-8. The CSRA provided for administrative review followed by direct appeal to the Federal Circuit. *Id*. at 10. The Supreme Court held that the CSRA's "comprehensive system for reviewing personnel action taken against federal employees" provided the plaintiffs' exclusive means of review. *Id*. at 5. Further, the Court expressly rejected the plaintiffs' argument that the CSRA's "exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional." *Id*. at 13. The Court explained that "the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit," and "the Federal Circuit is fully capable of providing meaningful review of petitioners' claims." *Id*. at 10.

Further, the D.C. Circuit has explained:

> Under *Thunder Basin's* framework, courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is "fairly discernible in the statutory scheme," and (ii) the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure." [*Thunder Basin*] at 207, 212.

*Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (holding that Congress did not intend to provide the district courts with jurisdiction over constitutional and non-constitutional claims that could be presented to the SEC, reviewable directly by the regional court of appeals).

## A.   Congress's Intent Is Fairly Discernible In The Section 337 Statutory Scheme

*Thunder Basin* teaches that courts must determine whether Congress intended an exclusive path of administrative and judicial review. Congress's intent with respect to the review of section 337 exclusion orders is "fairly discernable" from a review of the statute. As

discussed in detail below, section 337 sets forth a comprehensive and complete scheme for conducting investigations, issuing exclusion orders, enforcing exclusion orders, and for the review, modification or appeal of exclusion orders, none of which involves the district courts.

Specifically in this case, section 337 declares unlawful "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation . . . of articles" that "infringe a valid and enforceable United States patent."  19 U.S.C. § 1337(a)(1)(B)(i).  Congress charged the Commission with investigating and making a determination whether or not there is a violation of Section 337.

Section 337 investigations are governed by a comprehensive set of procedures and no findings can be made until the Commission completes an investigation of the alleged violation. *Id.* § 1337(b)(1).  "Upon commencing any such investigation," the Commission must "publish notice . . . in the Federal Register"; must "consult with" various federal agencies (including the Department of Justice); and must "make its determination . . . at the earliest practicable time" after notice is given.  *Id.* §§ 1337(b)(1)-(2).  Once an investigation ends, the Commission must generally determine whether a violation of Section 337 has occurred.  A determination that results in an exclusion order must "be made on the record after notice and opportunity for a hearing," at which "[a]ll legal and equitable defenses may be presented."  *Id.* § 1337(c).

To remedy a violation, the Commission generally issues one of two types of exclusion orders: (1) a limited exclusion order or (2) a general exclusion order.  *See Fuji Photo Film Co., Ltd. v. U.S. Int'l Trade Comm'n*, 474 F.3d 1281, 1286 (Fed. Cir. 2007).  Both types of orders direct CBP to bar infringing products from entering the country.  *See Yingbin-Nature (Guangdong) Wood Indus. Co. v. U.S. Int'l Trade Comm'n*, 535 F.3d 1322, 1330 (Fed Cir. 2008).  The Commission may also order "that any article imported in violation of" section 337

"be seized and forfeited to the United States" if certain conditions are met. *Id*. § 1337(i).  Except as provided in 337(f) and (j), "any exclusion from entry or order under [section 337] shall continue in effect until the Commission finds, and in the case of exclusion from entry notifies the Secretary of the Treasury, that the conditions which led to such exclusion from entry no longer exist." *Id*. § 1337(k).

Section 337 also sets forth a comprehensive scheme for the review and appeal of exclusion orders.  As previously discussed, any person adversely affected by a final determination can seek rescission or modification of the order in front of the Commission and/or appeal to the Federal Circuit.

Further, a review of the legislative history behind section 337 reflects that Congress intended to channel review of exclusions resulting from the Commission's exclusion orders to the Federal Circuit.  Indeed Congress clarified that ITC orders "are directly reviewable by the" Federal Circuit.  H.R. Rep. No. 96-1235, at 68 (1980); *see also* S. Rep. No. 96-466, at 7 (1979); *Hearing Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary*, 96th Cong. 25 (1979) (technical comments of International Trade Commission). In sum, section 337 specifies *who* may seek judicial review, *what* orders are subject to review, *when* review must be sought, *where* review must occur, *on what terms* review must be conducted, and *how* orders may be reconsidered, modified or rescinded.  Indeed, section 337 is so comprehensive and clear that Congress's intent to channel issues surrounding exclusion orders to the Commission and the Federal Circuit, is more than "fairly discernable."

**B.    Wirtgen's Claims Are The Type Congress Intended To Be Reviewed In The Statutory Scheme**

The second factor relevant to *Thunder Basin*, as discussed in *Jarkesy, supra*, is that plaintiff's claims are the type Congress intended to be reviewed within the statutory scheme of

Section 337 is also present here. [3]   The claims here fall within the heartland of the type of matter that Congress mandated be channeled through Commission proceedings pursuant to section 337. Wirtgen seeks to litigate the scope and implementation of a Commission order.  Those claims must be heard by the Commission in the first instance.

 In Counts I and III of its complaint, Wirtgen alleges that its redesigned road construction machines were outside the scope of the limited exclusion order.  Wirtgen alleges that CBP's determination otherwise was unreasonable and, further, that CBP's requirement that Wirtgen prove that the machines were outside the scope was unconstitutional.  Compl. Counts I and III. In enacting section 337, however, the proper scope of a limited exclusion orders is precisely the type of claim that Congress channeled to the Commission in the form of a modification proceeding or an appeal to the Federal Circuit.  Arguments regarding the proper scope of a Commission order belong before the Commission, not a federal district court.

---

[3]  Both the Federal Circuit and the Court of International Trade, which generally review CBP exclusions of merchandise, have previously assumed that the legal framework of section 337 did not preclude the Court of International Trade from exercising jurisdiction pursuant to 28 U.S.C. §§ 1581(a), (i).  *See, e.g., Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1348 (Fed. Cir. 2006); *Corning Gilbert Inc. v. United States*, 896 F. Supp. 2d 1281, 1284 (Ct. Int'l Trade 2013); *One World Techs., Inc. v. United States*, No. 1:18-cv-00200 (Ct. Int'l Trade).  But neither court has ever been presented with the effect of section 337 channeling on the Court of International Trade's jurisdiction.  "The existence of unaddressed jurisdictional defects has no precedential effect."  *Lewis v. Casey*, 518 U.S. 343, 353 n.2 (1996); *accord Automated Merchandising Sys. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015).  Further, these decisions are not binding on this Court.  In any case, even were Congress have to authorized an alternative of review though the Court of International Trade, it would not alter the fact that a Federal district court is plainly the wrong forum in which to litigate issues regarding the scope of exclusion orders.

Here, however, Wirtgen declined to seek a modification proceeding with the Commission.[4]  Rather, Wirtgen seeks from this Court, among other things, injunctive and declaratory relief "ordering that the LEO does not cover products not adjudicated by the Commission, including the redesigned 1810 Series machines . . . ." *Id*. at 20.  In essence Wirtgen seeks a determination from this Court that its redesigned road constructing machines should be carved out of the limited exclusion order.  Indeed, it seeks an order from this Court declaring that "the LEO covers only those machines that the Commission determined to infringe claim 19 of the '693 patent."  Compl. Prayer for Relief.  However, as explained in detail above, the statute already provides Wirtgen with "post-order procedures to help ensure proper enforcement of its exclusion, consent, and cease and desist orders" including seeking a modification proceeding and/or appealing to the Federal Circuit.

This Court similarly lacks jurisdiction to entertain Count II, which raises a constitutional challenge to two agency officials involved in the enforcement and implementation of the Commission's order.  Compl. at ¶¶ 310-52.  Wirtgen cannot circumvent the congressionally mandated path for review of Commission orders by collaterally attacking the qualifications of the officials charged with implementing those orders.  As the D.C. Circuit and a number of other

---

[4]  Notably, in accordance with the statutory scheme created by Congress, on January 16, 2020, the Commission instituted a modification proceeding "addressed to whether Wirtgen's redesigned XFi and Xti machines infringe claim 19 of the '693 patent and therefore fall within the scope of the limited exclusion order, or whether the Exclusion Order should be modified to include an explicit exemption for Wirtgen's Model XFi and XTi redesigned machines."  85 Fed. Reg. 3,944 (Int'l Trade Comm'n Jan. 23, 2020).  *See also* 1088 Limited Exclusion Order ("The Commission may modify this Order in accordance with the procedures described in Rule 210.76 of the Commission's Rules of Practice and Procedure (19 C.F.R. § 210.76)).  The Commission's modification proceeding will determine the breadth of the limited exclusion order with respect to Wirtgen's redesigned road construction machines and, as a consequence, establish CBP's authority to continue to exclude those machines or allow Wirtgen to import the machines into the United States.  The modification proceeding will dispose of all Wirtgen's claims.

courts of appeals have recognized, Appointments Clause and other challenges to agency officials are properly brought in tandem with litigation over the merits of the underlying claims (here, the scope of the limited exclusion order), and are subject to the same *Thunder Basin* principles as the underlying claims themselves.  *See Hill v. SEC*, 825 F.3d 1236, 1252 (11th Cir. 2016) (statutory scheme channeled Appointments Clause challenge to administrative law judge "into the administrative forum" and "preclude[d] parallel federal district court litigation"); *Bennett v. SEC*, 844 F.3d 174, 188 (4th Cir. 2016) (similar); *Tilton v. SEC*, 824 F.3d 276, 278-79 (2d Cir. 2016) (similar); *Bebo v. SEC*, 799 F.3d 765, 775 (7th Cir. 2015) (similar for separation-of-powers challenge to administrative law judge); *Jarkesy v. SEC*, 803 F.3d 9, 15, 19-22, 25, 27 (D.C. Cir. 2015) (endorsing *Bebo*'s reasoning).  Therefore the entire complaint should be dismissed.

## CONCLUSION

Wirtgen's attempt to bypass the scheme enacted by Congress cannot be countenanced and we respectfully request that this Court dismiss Plaintiff's complaint for lack of subject-matter jurisdiction.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ William Chang            /s/ Patricia M. McCarthy

By:    WILLIAM CHANG                PATRICA M. MCCARTHY
       D.C. Bar No. 1030057                 JUSTIN R. MILLER
       Assistant United States Attorney        Assistant Directors
       District of Columbia
       555 4th Street NW
       Washington, DC 20530                /s/ Jason M. Kenner
       Telephone: (202) 252-2510            JASON M. KENNER
       William.chang2@usdoj.gov             EDWARD F. KENNY
                                             MARCELLA POWELL

Senior Trial Counsel
GUY EDDON
Trial Attorney
U.S. Dept. of Justice, Civil Division
International Trade Field Office
26 Federal Plaza – Suite 346
New York, NY 10278
Telephone: (212) 264-9241
Fax: (212) 264-1916

January 31, 2020                    ATTORNEYS FOR DEFENDANTS