**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **WIRTGEN AMERICA, INC.,** |  |
| Plaintiff, |  |
| v. | Case No. 20-cv-195 (CRC) |
| **UNITED STATES,** *et al.*, |  |
| Defendants |  |

## MEMORANDUM OPINION

Plaintiff Wirtgen America, Inc. distributes road-construction equipment manufactured by its German parent company. Last summer, the International Trade Commission ("ITC" or the "Commission") ruled that a line of Wirtgen's road-milling machines infringed a patent held by rival Caterpillar, Inc., so it entered a limited exclusion order barring Wirtgen from importing machines "that infringe" the Caterpillar patent. <u>See</u> 19 U.S.C. § 1337(d)(1), (e)(1). Wirtgen subsequently attempted to import machines from the same line that it proclaimed had been modified to avoid infringement. U.S. Customs and Border Protection ("CBP" or "Customs"), which enforces ITC exclusion orders, nevertheless denied entry of a number of Wirtgen's redesigned machines. In doing so, it followed the Commission's longstanding interpretation of its remedial orders as covering not only the precise articles that were adjudicated to infringe, but also any similarly infringing articles that might be imported in the future, as well as the ITC's concomitant policy of requiring the importer to demonstrate that the modified articles no longer infringe.

Wirtgen's challenge to the exclusion of its redesigned machines has been proceeding along two roadways. First, the Commission has undertaken a modification proceeding to determine whether the machines fall within the exclusion order, and Wirtgen's appeal of the

Commission's determination as to the original machines remains pending before the Federal Circuit. Second, Wirtgen filed an administrative protest with Customs contesting the exclusion of its redesigned machines, the denial of which is currently pending before the Court of International Trade ("CIT").

With this case, Wirtgen seeks to open yet another avenue of judicial review. Here, Wirtgen purports not to contest any patent infringement determinations by the ITC or the scope of the limited exclusion order. Wirtgen instead frames its complaint merely as a challenge to Customs's application of the order to the redesigned machines, which it claims violates the Due Process and Appointments Clauses of the federal Constitution. On that basis, Wirtgen seeks a temporary restraining order and a preliminary injunction requiring Customs to permit entry of the machines for immediate delivery to Wirtgen's customers.

Customs, joined by the Commission as an intervenor, moves to dismiss the complaint for lack of subject-matter jurisdiction. They contend that despite how Wirtgen has styled its claims, its true targets are the scope of the limited exclusion order itself and the Commission's interpretation of its statutory authority to issue broad remedial orders that cover similar, unadjudicated articles. This Court lacks jurisdiction over Wirtgen's actual claims, the Government contends, because Congress has channeled such claims through an alternative administrative and judicial review process—namely, a modification proceeding before the Commission followed by a right of appeal to the Federal Circuit. See Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994).

The Court of International Trade recently asserted jurisdiction over Wirtgen's challenge to Customs's protest denial, rejecting the Government's position that Wirtgen's claims must go through the Commission. But this Court need not decide which of the two administrative

highways—ITC to the Federal Circuit or Customs to the CIT—Wirtgen must travel (although it will express a view), because whichever route Congress meant to lay, Wirtgen may not pave a new one in federal district court. Concluding that Congress intended for Wirtgen's claims to be litigated elsewhere, the Court will grant the Government's motion to dismiss, deny Wirtgen's motion for injunctive relief, and dismiss the case.

## I. Background

Section 337 of the Tariff Act of 1930 was enacted to "protect[] . . . the public interest from unfair trade practices in international commerce." Akzo N.V. v. Int'l Trade Comm'n, 808 F.2d 1471, 1488 (Fed. Cir. 1986). To that end, it prohibits "[t]he importation into the United States" of, among other things, "articles that infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B)(i).

The International Trade Commission administers Section 337. The Tariff Act tasks the Commission with investigating and making determinations as to violations of Section 337, including patent infringement. See id. § 1337(b)(1), (c). Following a determination of a Section 337 violation, the Commission has broad remedial authority to issue exclusion orders barring "the articles concerned" from entry into the United States. Id. § 1337(d)(1), (e)(1).

Meanwhile, Customs and Border Patrol enforces orders issued by the Commission. The Commission must notify Customs of any exclusion order that it issues, and Customs "shall" accordingly "refuse such entry." Id. § 1337(d)(1), (e)(1).[1]

---

[1] Section 337 gives this power to the Secretary of Treasury, who has in turn delegated it to Customs. See, e.g., Tech. Corr. Regarding the Org. Structure of U.S. Customs & Border Prot., 72 Fed. Reg. 59,166, 59,167 (Oct. 19, 2007).

A. <u>Proceedings before the International Trade Commission</u>

       *1. Determination of Patent Infringement*

Section 337 investigations proceed in two parts: an evidentiary hearing before and final initial determination ("FID") by an administrative law judge ("ALJ"), followed by Commission review. Determinations as to violations of Section 337 are to be made through formal adjudication, *i.e.*, "on the record after notice and opportunity for a hearing." 19 U.S.C. § 1337(c); <u>see also</u> 19 C.F.R. §§ 210.1-.79.

In November 2017, Caterpillar, Inc. and Caterpillar Paving Products, Inc. (collectively, "Caterpillar") filed a complaint with the Commission alleging that certain models of Wirtgen's road construction machines infringe U.S. Patent No. 7,140,693 (the "'693 patent"). <u>See</u> Compl. ¶ 169; Compl., Certain Rd. Constr. Mach. & Components Thereof, Inv. No. 337-TA-1088 (Int'l Trade Comm'n Nov. 29, 2017). Following an evidentiary hearing, an ALJ issued a final initial determination in February 2019. <u>See</u> Compl., Exh. 16 [hereinafter "FID"]. The FID concluded that Wirtgen's 1810 Series machines ("Original 1810 Series") infringed claim 19 of Caterpillar's '693 patent. <u>Id.</u> at 84–85; Compl. ¶¶ 170, 173.

During the Commission's investigation, Wirtgen redesigned the swing leg of its 1810 series machines (the "Redesigned 1810 Series"). Compl. ¶ 179. Wirtgen argued to the ALJ that the Redesigned 1810 Series machines did not infringe the '693 patent. The ALJ concluded that "[t]hese alternate swing-leg designs are not ripe for a determination of infringement *or non-infringement* in this investigation," because "[t]hese designs have not been implemented in any imported articles . . . and are thus outside the scope of this investigation." FID at 25 (emphasis added). On July 15, 2019, the Commission adopted the FID in full, including its finding that the Original 1810 Series machines infringe claim 19 of the '693 patent. <u>See</u> Op., Certain Rd. Constr.

Mach. & Components Thereof, Inv. No. 337-TA-1088, 2019 WL 6003332 at *15–17 (Int'l Trade Comm'n July 15, 2019).

### 2. Limited Exclusion Order

The Commission must issue a limited exclusion order ("LEO") against respondents that are found to have imported infringing articles. See 19 U.S.C. § 1337(d)(1).[2] Upon its finding of patent infringement by Wirtgen, the ALJ thus recommended in the FID that the Commission issue an LEO against Wirtgen. Compl. ¶ 175.

Wirtgen argued to the ALJ that the LEO should be limited "to [the] accused road milling machines and . . . should not encompass other road construction machines and components." FID at 79. The ALJ rejected that contention. The ALJ cited "[l]ong-standing Commission precedent support[ing] [the] issuance of broad remedial orders extending to '*all* products covered by the patent claims as to which a violation has been found, rather than limiting its orders to only those specific models selected for infringement analysis.'" Id. at 80 (quoting Op., Certain Hardware Logic Emulation Sys. & Components Thereof, Inv. No. 337-TA-383, USITC Pub. 3089 at 16 (Int'l Trade Comm'n Mar. 1998)) (emphasis added).

The Commission adopted the ALJ's recommendation and, on June 27, 2019, issued an LEO against Wirtgen. The Commission "determined that there is a violation of Section 337 . . . in the unlawful importation . . . by [Wirtgen] of certain road construction machines and

_____

[2] A limited exclusion order applies only to "persons determined by the Commission to be violating this section." 19 U.S.C. § 1337(d)(2). The Commission may also issue a general exclusion order, but only upon a showing that "a general exclusion from entry of articles is necessary to prevent circumvention of an exclusion order limited to products of named persons," id. § 1337(d)(2)(A), or that "there is a pattern of violation of this section and it is difficult to identify the source of infringing products," id. § 1337(d)(2)(B). Although Wirtgen tries to draw a distinction between limited and general exclusion orders with respect to the extent of the Commission's remedial authority, any such distinction is not dispositive here.

components thereof covered by claim 19 of [the '693 patent]." Compl., Exh. 14 at 1 [hereinafter "LEO"]. The Commission further "determined that the appropriate form of relief" for that violation "includes a limited exclusion order prohibiting the unlicensed entry into the United States of certain road construction machines and components thereof manufactured by [Wirtgen] *that infringe* claim 19 of the '693 patent." Id. (emphasis added).

The LEO further provided that "persons seeking to import road construction machines and components thereof, that are potentially subject to this Order may be required to certify that . . . the products being imported are not excluded from entry under paragraph l of this Order." Id. at 3. In addition, Customs could, "[a]t its discretion, . . . require persons who have provided the certification described in this paragraph to furnish such records or analyses as are necessary to substantiate this certification." Id.[3]

### 3. Administrative and Judicial Review

"[F]inal determination[s] of the Commission" made under Section 337 may be appealed "to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of Title 5." 19 U.S.C. § 1337(c). The Federal Circuit has "*exclusive* jurisdiction [ ] to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337)." 28 U.S.C. § 1295(a)(6) (emphasis added). Wirtgen's appeal of the Commission's underlying determination of patent infringement with respect to the Original 1810 Series

---

[3] In its written opinion on July 15, 2019, the Commission formally adopted the ALJ's recommendation to "issue an LEO against [Wirtgen], covering infringing products . . . ." Op., Certain Rd. Constr. Mach. & Components Thereof, Inv. No. 337-TA-1088, 2019 WL 6003332 at *27 (Int'l Trade Comm'n July 15, 2019). The Commission also concluded that "the LEO should include the standard certification provision that CBP typically requests." Id.

machines is still pending before the Federal Circuit.  See Caterpillar, Inc. v. Int'l Trade Comm'n,

No. 19-2306 & Wirtgen GmbH v. Int'l Trade Comm'n, No. 19-2320 (Fed. Cir. 2019).[4]

Section 337 also provides administrative avenues for modification or rescission of

remedial orders issued by the Commission, including exclusion orders.  An aggrieved party may

"petition[] the Commission for a determination that the petitioner is no longer in violation of this

section or for a modification or rescission of an exclusion from entry or order under subsection

(d), (e), (f), (g), or (i)."  19 U.S.C. § 1337(k)(2).  "[R]elief may be granted by the Commission

with respect to such petition (i) on the basis of new evidence or evidence that could not have

been presented at the prior proceeding, or (ii) on grounds which would permit relief from a

judgment or order under the Federal Rules of Civil Procedure."  Id. § 1337(k)(2)(B).  "[T]he

burden of proof in any proceeding before the Commission regarding such petition shall be on the

petitioner."  Id. § 1337(k)(2)(A).

Despite invitations to do so, Wirtgen did not seek modification of the LEO with respect

to the Redesigned 1810 Series machines.  See Compl. ¶ 96; Customs's Mot. to Dismiss 7–8.  On

January 16, 2020, the Commission, on its own initiative, see 19 C.F.R. § 210.76(a)(1), instituted

a modification proceeding to adjudicate Wirtgen's claim that the LEO did not apply to the

Redesigned 1810 Series machines, see Comm'n Notice, 85 Fed. Reg. 3,944 (Jan. 23, 2020).  The

Commission has delegated the modification proceeding to an ALJ and set June 27, 2020 as the

---

[4] Wirtgen's first motions to stay the LEO pending its appeal were denied by both the
Federal Circuit, see Order Denying Motion to Stay, Wirtgen GmbH v. Int'l Trade Comm'n, No.
19-2320 (Fed. Cir. Oct. 10, 2019), and the Commission, see Order, Certain Rd. Constr. Mach. &
Components Thereof, Inv. No. 337-TA-1088 (Int'l Trade Comm'n Sept. 12, 2019).  Wirtgen's
renewed motions to stay the LEO were also denied by both the Federal Circuit, see Defs. Notice
of Orders Docketed in Related Matters, ECF No. 38, Exh. 1, and the Commission, see Order,
Certain Rd. Constr. Mach. & Components Thereof, Inv. No. 337-TA-1088 (Int'l Trade Comm'n
Jan. 31, 2020).

deadline for a recommended determination.  See Defs. Notice of Orders Docketed in Related

Matters, ECF No. 38, Exh. 2; Pl. Notice of Orders Docketed in Related Matters, ECF No. 41,

Exh. B.  Should the Commission decide against Wirtgen, it may appeal that decision to the

Federal Circuit.  See Crucible Materials Corp. v. Int'l Trade Comm'n, 127 F.3d 1057, 1060 (Fed.

Cir. 1997) ("A party may appeal a final determination modifying a remedial order issued

pursuant to § 1337.").

    B.  Proceedings Before Customs

As mentioned, Section 337 tasks Customs with enforcing exclusion orders issued by the

Commission.  Upon receipt of an exclusion order from the Commission, Customs "shall, through

the proper officers, refuse such entry."  19 U.S.C. § 1337(d)(1), (e)(1).  "The Commission's

exclusion order remains in effect until the Commission determines, and notifies [Customs], that

the conditions which led to the exclusion no longer exist, or until the determination of the

Commission on which the order is based is disapproved by the President."  19 C.F.R.

§ 12.39(b)(1).

    *1.  Activities Prior to Importation of the Redesigned Machines*

On August 13, 2019, at Wirtgen's request, Wirtgen's counsel met with Customs officials

to discuss the structure and operation of the Redesigned 1810 Series machines.  Compl. ¶ 212.

Customs invited Wirtgen to request an advisory ruling as to whether the LEO covered the

Redesigned 1810 Series machines.  See 19 C.F.R. § 177.1(a)(1) (setting forth a procedure

through which importers may, prior to importation, request from Customs "rulings or

information setting forth, with respect to a specifically described transaction, a definitive

interpretation of applicable law, or other appropriate information").  Wirtgen declined.  See

Compl. ¶ 82; Customs's Mot. to Dismiss 7–8.

Instead, Wirtgen sent Customs a memorandum on September 5, 2019, which indicated that it would soon import the first Redesigned 1810 Series machines at the port of Baltimore and stated that the machines did not fall within the scope of the LEO. Compl. ¶ 219. Wirtgen clarified that the memorandum was not a request for an administrative ruling under 19 C.F.R. part 177.

### 2. Denial of Entry of the Redesigned Machines

Customs permitted nine Redesigned 1810 Series machines to be imported into the United States between September 9 and December 23, 2019. Compl. ¶¶ 223–33. On November 18 and 21, 2019, however, Customs detained five Redesigned 1810 Series machines at the port of Brunswick, Georgia.

On December 6, 2019, Customs wrote a letter to the Commission seeking its position on Wirtgen's Redesigned 1810 Series machines. Letter from C. Steuart to M. Valentine, Inv. No. 337-TA-1088, EDIS Doc. ID 699429 at 2 (Dec. 6, 2019) [hereinafter "Dec. 6 Letter"].[5] In response, the Commission confirmed that the redesigned machines had been "outside the scope" of its earlier investigation. Letter from M. Valentine to C. Steuart, Inv. No. 337-TA-1088, EDIS Doc. ID 699436 at 2 (Dec. 12, 2019) [hereinafter "Dec. 12 Letter"]. The Commission stated, however, that its finding of a Section 337 violation shifted the burden to "the adjudged infringer . . . to demonstrate that similar articles, *such as redesigned articles*, do not infringe." Id. (emphasis added). The Commission also noted that Wirtgen had declined its invitation to

---

[5] As relevant here, Customs sought "further clarification as to . . . [w]hether the Commission adjudicated any redesigned versions of Wirtgen's series 1810 milling machines as part of the 1088 investigation" and "[w]hether the Commission found any of Wirtgen's series 1810 milling machines to not infringe claim 19 of the '693 patent either in the 1088 investigation or in any subsequent proceedings before the Commission." Id.

seek an advisory opinion as to the redesigned products, so "there have been no subsequent proceedings in which Wirtgen's series 1810 milling machines have been found not to infringe claim 19 of the '693 patent."  Id.

With that clarification from the Commission, Customs issued Notices of Exclusion on December 18 and 27, 2019 as to a total of six Redesigned 1810 Series machines.  Compl. ¶¶ 239–41; id., Exh. 15 [hereinafter "Notice of Exclusion"]; see 19 C.F.R. § 12.39(b)(3) & (4). Customs explained that it was excluding the machines from entry "by reason of the limited exclusion order issued by the [ITC] in Investigation No. 337-TA-1088."  Notice of Exclusion 1. Citing Commission precedent, Customs noted that "[t]he above-identified exclusion order is not limited to the specific products that were before the Commission during the investigation, but instead extends to all products, *including any new and redesigned products*, that are manufactured abroad by [Wirtgen] that infringe the relevant intellectual property."  Id. at 2 & n.1 (emphasis added) (citing Op., Certain Optical Disk Controller Chips & Chipsets, Inv. No. 337-TA-506, USITC Pub. 3935 at 56–57 (Int'l Trade Comm'n July 2007)).

Because the Commission had found a Section 337 violation by Wirtgen and "the issuance of an exclusion order 'effectively shifts to would-be importers of potentially infringing articles, as a condition of entry, the burden of establishing infringement,'" "the burden is on Wirtgen," Customs explained, "to show that the potentially infringing articles (*i.e.*, . . . Wirtgen's series 1810 milling machines) do not infringe claim 19 of the '693 patent."  Id. at 3 (quoting Hyundai Elecs. Indus. Co. v. Int'l Trade Comm'n, 899 F.2d 1204, 1210 (Fed Cir. 1990)).  Wirtgen, Customs concluded, had not met that burden with respect to the Redesigned 1810 Series machines that it was trying to import.  Customs noted that Wirtgen had not sought an advisory ruling from either it or the Commission as to those articles.  Id. at 3–4.  "[A]bsent a

determination by CBP or the Commission that the article[s] [are] not subject to the exclusion order," Customs refused to accept Wirtgen's "self-certification stat[ing] that the articles being imported are not subject to the exclusion order." Id. at 5.

### 3. *Administrative Protest Before Customs*

Decisions by Customs "as to the exclusion of merchandise from entry . . . under any provision of the customs laws, except a determination appealable under section 1337 of this title[,] shall be final and conclusive upon all persons," unless the decision is appealed through specified channels. 19 U.S.C. § 1514(a)(4). An aggrieved party must first file a protest with Customs and, if unsuccessful, may then bring a civil action "contesting the denial of [the] protest" in the Court of International Trade. Id.

On December 24, 2019, Wirtgen filed a protest with Customs contesting the exclusion of its Redesigned 1810 Series machines. Compl. ¶ 113; id., Exh. 25 [hereinafter "Protest Denial"]. Wirtgen argued that the LEO did not encompass the redesigned machines and that, in any event, Customs lacked authority to exclude unadjudicated articles. Pl. Opp. 9. On January 27, 2020, Customs denied Wirtgen's protest "as not protestable." Protest Denial at 2. Although "the exclusion of merchandise from entry" is generally a protestable matter under 19 U.S.C. § 1514(a)(4), Customs noted that "Congress excepted—carved out—from protest 'a determination appealable under section 1337 of this title.'" Id. at 1 (quoting 19 U.S.C. § 1514(a)(4)). Because "Wirtgen's underlying cause of action in the protest stems from the exclusion order issued by the Commission . . . , rather than CBP's exclusion of merchandise from entry," the proper avenue for relief, Customs concluded, "is an appeal as provided by 19 U.S.C. § 1337." Id. at 1–2.

### 4. *Judicial Review of the Protest Denial*

Wirtgen filed a complaint challenging CBP's denial of its protest in the Court of International Trade on January 30, 2020. See Compl., Wirtgen America, Inc. v. United States, No. 20-cv-27 (Ct. Int'l Trade Jan. 30, 2020); 19 U.S.C. § 1514(a) (permitting an aggrieved party to bring a civil action in the Court of International Trade "contesting the denial of a protest"); see also 28 U.S.C. § 2636(a) (requiring "[a] civil action contesting the denial, in whole or in part, of a protest under section 515 of the Tariff Act of 1930" to be filed within 180 days). Wirtgen seeks reversal of the protest denial and argues that "Customs exceeded its authority by detaining and excluding from importation Wirtgen's Redesigned 1810 Series machines without providing any showing that these machines fall within the scope of the LEO." Compl. ¶ 2, Wirtgen America, Inc. v. United States, No. 20-cv-27 (Ct. Int'l Trade Jan. 30, 2020).[6]

Customs filed a motion to dismiss for lack of subject-matter jurisdiction. On March 4, 2020, the Court of International Trade denied the motion. See Defs. Notice of Op. & Order Docketed in Related Matter, ECF No. 40, Exh. A [hereinafter "CIT Op."]. It concluded that "plaintiff has pled facts according to which Customs excluded the merchandise without being directed to do so by the Commission" and that it therefore had jurisdiction under 28 U.S.C. § 1581(a) to review that decision. Id. at 9. The Court also held that "a claim that Customs wrongfully excluded the merchandise giving rise to this dispute"—as opposed to "a claim that the Limited Exclusion Order is unlawful"—did not qualify as "a determination appealable under section 1337" within the meaning of 19 U.S.C. § 1514(a)(4). Id. at 11.

---

[6] Wirtgen also filed a motion for a temporary restraining order in that matter, which it withdrew on February 18, 2020. See Pl. Motion for TRO, Wirtgen America, Inc. v. United States, No. 20-cv-27 (Ct. Int'l Trade Jan. 30, 2020); Pl. Letter Withdrawing TRO, Wirtgen America, Inc. v. United States, No. 20-cv-27 (Ct. Int'l Trade Feb. 18, 2020).

C. <u>Proceedings Before This Court</u>

On January 24, 2020, Wirtgen brought suit in this Court challenging Customs's exclusion of its Redesigned 1810 Series machines as arbitrary and capricious under the Administrative Procedure Act ("APA") and unconstitutional under the Appointments Clause and Due Process Clause of the United States Constitution. It simultaneously filed a motion for a preliminary injunction and temporary restraining order "directing Customs to immediately release all Wirtgen Redesigned 1810 Series machines currently being detained and precluding Customs from detaining or seizing Wirtgen's Modified 1810 Series machines until the Court resolves the preliminary injunction motion." Pl. Mot. for TRO 2.

Although Wirtgen only sued Customs (and its officials), the Court granted the International Trade Commission's motion to intervene as a defendant as of right to protect its interests under Federal Rule of Civil Procedure 24(a)(2). Both sets of defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The Court heard argument on the pending motions on February 18, 2020.

## II. Legal Standards

To defeat a Rule 12(b)(1) motion, Plaintiff must show "by a preponderance of the evidence that the Court has subject matter jurisdiction." <u>Biton v. Palestinian Interim Self-Gov't Auth.</u>, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). In making that determination, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." <u>Am. Nat'l Ins. Co. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). The Court may also "consider materials outside the pleadings in

deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

"Federal courts possess only the power authorized by the Constitution and by statute." Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., 390 F. Supp. 3d 72, 78 (D.D.C. 2019) (Cooper, J.) (citing Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015)). "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." Am. Fed'n of Gov't Employees, AFL-CIO v. Trump, 929 F.3d 748, 754 (D.C. Cir. 2019).

To determine whether Congress has provided an alternative review scheme, courts use the two-step framework that the Supreme Court set forth in Thunder Basin, 510 U.S. at 200. Under that framework, courts determine whether "Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review" by looking first to whether "such intent is 'fairly discernible in the statutory scheme.'" Jarkesy, 803 F.3d at 15 (quoting Thunder Basin, 510 U.S. at 207). If such Congressional intent is apparent, courts must then evaluate whether "the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" Id. (quoting Thunder Basin, 510 U.S. at 207).

With respect to the first step, "[w]hether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." Thunder Basin, 510 U.S. at 307 (citations omitted). "Generally," courts are to presume that "when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'" Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561

U.S. 477, 489 (2010) (quoting Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965)).

With respect to the second step, "[t]o unsettle [the] presumption of initial administrative review—made apparent by the structure of the organic statute—requires a strong countervailing rationale." Jarkesy, 803 F.3d at 17 (quoting E. Bridge, LLC v. Chao, 320 F.3d 84, 89 (1st Cir. 2003)). "A claim will be found to fall outside of the scope of a special statutory scheme in only limited circumstances": when (1) "a finding of preclusion might foreclose all meaningful judicial review"; (2) "the claim is wholly collateral to the statutory review provisions"; and (3) "the claims are beyond the expertise of the agency." Arch Coal, Inc. v. Acosta, 888 F.3d 493, 500 (D.C. Cir. 2018).

## III. Analysis

The Court will consider each potential roadway that Congress laid out for Wirtgen—the ITC to the Federal Circuit and Customs to the CIT.

### A. The International Trade Commission / Federal Circuit Roadway

The Government moves to dismiss for lack of subject-matter jurisdiction on the ground that the Tariff Act commits Wirtgen's claims to an exclusive administrative review process before the International Trade Commission and the Federal Circuit. As explained, the Tariff Act creates a comprehensive administrative scheme that entrusts the ITC with investigating, making determinations as to, and issuing exclusion orders to remedy violations of Section 337. See 19 U.S.C. § 1337(b)(1), (c), (d)(1), (e)(1). Proceedings concerning the modification or rescission of an exclusion order may be requested by aggrieved parties or initiated by the Commission. See

15

id. § 1337(k)(2); 19 C.F.R. § 210.76(a)(1).  Aggrieved parties may obtain judicial review of final

Commission determinations in the Federal Circuit.[7]  19 U.S.C. § 1337(c).

Congress has specified that "the Federal Circuit shall have *exclusive* jurisdiction to

review the final determinations of the United States International Trade Commission relating to

unfair practices in import trade, made under section 337 . . ."  28 U.S.C. § 1295(a)(6) (emphasis

added).[8]  Such "exclusive" grants of jurisdiction have been found to be preclusive of district

court jurisdiction.  See, e.g., Thunder Basin, 510 U.S. at 208 (noting the relevant statute's

language that the jurisdiction of the appropriate court of appeals "shall be *exclusive* and its

judgment and decree shall be final" (quoting 30 U.S.C. § 816(a)(1)) (emphasis added)); Jarkesy,

803 F.3d at 16 (noting that "[t]he reviewing court . . . exercises '*exclusive*' jurisdiction to 'affirm

or modify and enforce or to set aside the order in whole or in part'" (quoting 15 U.S.C.

§ 78y(a)(3)) (emphasis added)).  Given this "comprehensive structure for the adjudication of

[Section 337 violations] in administrative proceedings," it is "fairly discernible" that Congress

---

[7] The Tariff Act further provides that "[n]otwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), (f), and (g) with respect to its findings on . . . *the appropriate remedy* shall be reviewable in accordance with section 706 of Title 5."  19 U.S.C. § 1337(c) (emphasis added).  The Federal Circuit has interpreted this language to evince merely Congress's "desire to subject Commission determinations on . . . remedy to a less stringent standard of judicial review than determinations of substantive violations of section 337."  Hyundai, 899 F.2d at 1208.  It should not be read to authorize an independent APA suit to review Commission exclusion orders in federal district court.

[8] Consistent with Congress's intent that the Federal Circuit have *exclusive* jurisdiction over such determinations, Congress expressly provided that the Court of International Trade shall have jurisdiction to review "decisions of the Customs Service as to the exclusion of merchandise from entry . . . under any provision of the customs laws, *except a determination appealable under section 1337 of this title*."  19 U.S.C. § 1514(a)(4) (emphasis added).  More on this later.

intended to preclude district court review of Commission factual and remedial determinations under Section 337.  Jarkesy, 803 F.3d at 16–17.[9]

Wirtgen does not contest the exclusivity of this "special statutory scheme."  Arch Coal, 888 F.3d at 500.  It maintains instead that its claims "fall outside the scope of [that] . . . scheme" because they challenge action by *Customs*, not the ITC.  Id.  Wirtgen purports to challenge not the underlying exclusion order issued by the Commission, but only *Customs's* practice of applying such exclusion orders to non-adjudicated articles.  See, e.g., Compl. ¶¶ 294–99.

In the Government's view, however, Wirtgen's claims against Customs are just a thinly veiled disguise for its real grievance—that the *Commission* should not be able to issue exclusion orders that extend beyond articles that have specifically been adjudicated to infringe.  See, e.g., Compl. ¶ 20 (seeking an "order[] that the LEO does not cover products not adjudicated by the Commission, including the redesigned 1810 machines").  After all, the Government posits, Customs merely enforces remedial orders issued by the Commission; it does not exercise independent authority to assess whether articles subject to the Commission's orders infringe.  And, to the extent that Wirtgen challenges the *Commission's* authority to issue an exclusion order that encompasses redesigned articles, that challenge, the Government argues, belongs in the Commission and the Federal Circuit.

---

[9] Although the Court has not found any cases addressing this precise question through the lens of Thunder Basin, the Second Circuit has, in giving *res judicata* effect to an ITC decision, noted that "it [is not] apparent why the policies underlying the doctrine of *res judicata* should not require [the importer], having chosen to initiate an administrative adjudication, to take the *exclusive* avenue of appeal afforded by law—review of ITC decisions by the Court of Appeals for the Federal Circuit."  Union Mfg. Co. v. Han Baek Trading Co., 763 F.2d 42, 45 (2d Cir. 1985) (citing 19 U.S.C. § 1337(c); 28 U.S.C. § 1295(a)(6)) (emphasis added).  "Litigants," the Second Circuit went on to explain, "should not be able to circumvent the decisional authority of the ITC and the reviewing authority of the Federal Circuit by filing in a district court what amounts to a collateral attack on the ITC determination."  Id.

The Court takes the government's point. The record shows that Customs sought clarification from the Commission as to the redesigned machines prior to excluding them from entry, see Dec. 6 Letter; Dec. 12 Letter, and that the Notices of Exclusion that Customs ultimately issued for those machines rely on Commission and Federal Circuit precedent affirming the Commission's longstanding practice of issuing broad exclusion orders, see Notice of Exclusion 2 n.1. Indeed, Wirtgen's counsel all but admitted at the hearing that Customs was "apply[ing] standard procedures by the Commission" in interpreting the LEO to encompass the redesigned machines. Tr. 38:18–39:16.

The Court would thus be wary of declaring, on this record, that Customs acted unlawfully by excluding the redesigned articles because doing so would be tantamount to holding, contrary to Federal Circuit and ITC precedent,[10] that the *Commission* may not lawfully issue exclusion orders that encompass redesigned articles. See generally Scottsdale Capital, 390 F. Supp. 3d at

---

[10] See, e.g., Suprema, Inc. v. Int'l Trade Comm'n, 796 F.3d 1338, 1349 (Fed. Cir. 2015) (en banc) ("[L]ike all forms of injunctive relief, an exclusion order prevents *future* illegal acts from occurring by, for example, preventing *similar* articles from entering the U.S." (emphasis added)); Op., Certain Optical Disk Controller Chips & Chipsets & Prod. Containing Same, Incl. DVD Players & PC Optical Storage Devices, Inv. No. 337-TA-506 (Int'l Trade Comm'n Aug. 1, 2007) ("The Commission's long-standing practice is to direct its remedial orders to *all* products covered by the patent claims as to which a violation has been found, rather than limiting its orders only to those specific models selected for the infringement analysis . . . . [W]hile individual models may be evaluated to determine importation and infringement, the Commission's jurisdiction extends to all models of infringing products that are imported at the time of the Commission's determination *and to all such products that will be imported during the life of the remedial orders*." (quoting Op. at 16, Certain Hardware Logic Emulation Sys. & Components Thereof, Inv. No. 337-TA-383 (Int'l Trade Comm'n Mar. 31, 1998)) (emphasis added)).

Moreover, shifting the burden to the adjudged infringer to show non-infringement is consistent with both the structure of the statute, see 19 U.S.C. § 1337(k)(2)(A) (placing "the burden of proof in any [modification] proceeding before the Commission . . . on the petitioner"), and precedent, see, e.g., Hyundai, 899 F.2d at 1210 (noting that the Commission may "effectively shift[] to would-be importers of potentially infringing articles, as a condition of entry, the burden of establishing noninfringement").

75 ("[T]his Court's jurisdiction turns on the substance of that claim rather than the label affixed to it."); <u>Fresno Cmty. Hosp. & Med. Ctr v. Azar</u>, 370 F. Supp. 3d 139, 149 (D.D.C. 2019) ("Plaintiffs' crafty pleading cannot hide the true nature of their claims. Nor can Plaintiff's clever phrasing be used to avoid a bar on judicial review."). At least to the extent that Wirtgen is effectively challenging whether the exclusion order encompasses the redesigned articles or the Commission's authority to issue such an order, the Court agrees with the Government that those claims belong with the ITC and the Federal Circuit.

*First,* "a finding of preclusion [w]ould [not] foreclose all meaningful judicial review" of Wirtgen's claims. <u>Thunder Basin</u>, 510 U.S. at 212–13. The Commission has already instituted a modification proceeding to "address[] . . . whether Wirtgen's redesigned . . . machines infringe claim 19 of the '693 patent and therefore fall within the scope of the LEO, or whether the LEO should be modified to include an explicit exemption for Wirtgen's . . . redesigned machines." Notice of Comm'n Det. to Institute a Mod. Proceeding, 85 Fed. Reg. 3,944, 3,944 (Jan. 23, 2020); <u>see also</u> Pl. Notice of Orders in Docketed Matters, Exh. B at 3 (undertaking "adjudication of Wirtgen's claim that the remedial orders in this investigation do not cover Wirtgen's redesigned series 1810 machines"). Wirtgen may appeal an adverse decision in that forum to the Federal Circuit. <u>See</u> <u>Crucible Materials Corp.</u>, 127 F.3d at 1060.

Moreover, as noted, Wirtgen has appealed the Commission's underlying determination that the Original 1810 Series machines infringe claim 19 of the '693 patent, which is the basis for the LEO at issue, to the Federal Circuit. <u>See</u> <u>Caterpillar, Inc. v. Int'l Trade Comm'n</u>, No. 19-2306 & <u>Wirtgen GmbH v. Int'l Trade Comm'n</u>, No. 19-2320 (Fed. Cir. 2019). Presumably, Wirtgen could also raise its challenges to the scope of the exclusion order in that action, although the record shows that it has not chosen to do so. <u>See, e.g.</u>, <u>Cisco Sys., Inc. v. Int'l Trade</u>

Comm'n, 873 F.3d 1354, 1362 (Fed. Cir. 2017) (reviewing the plaintiff's claim that "the Commission exceeded its authority to regulate 'articles that infringe'" in issuing a limited exclusion order that included components in Plaintiff's appeal of underlying infringement determination (quoting 19 U.S.C. § 1337(a)(1)(B)(i)); Kyocera Wireless Corp. v. Int'l Trade Comm'n, 545 F.3d 1340, 1355 (Fed. Cir. 2008) (reviewing a claim that "the Commission exceeded its statutory authority by issuing [the] LEO [at issue]").

*Second*, Wirtgen's claims are not "wholly collateral to [the] statute's review provision." Thunder Basin, 510 U.S. at 212 (internal quotation marks omitted). In the modification proceeding before the Commission, Wirtgen is free to raise its arguments as to why the LEO does not—or should not—encompass its redesigned machines. Indeed, the record of the proceeding before the Commission shows that Wirtgen has already done so. See, e.g., Wirtgen's Resp. to Comm'n Determination 9, Certain Rd. Constr. Mach. & Components Thereof, Inv. No. 337-TA-1088, Docket No. 2370 (Int'l Trade Comm'n Feb. 12, 2020) ("Even the Commission's authority under subsection (e), however, does not extend to unspecified products."); id. at 8 ("Even if the Commission could have issued an LEO that prohibited Wirtgen's redesigned machines from entry (which it could not have), the plain language of the LEO did not do so here."). Should the Commission—or the Federal Circuit on appeal—side with Wirtgen, Wirtgen would "obtain the same relief" that it seeks in this Court. Jarkesy, 803 F.3d at 23.

*Finally,* Wirtgen's claims are not "outside the agency's expertise." Thunder Basin, 510 U.S. at 212. To the extent that Wirtgen contests the meaning of the exclusion order, the Commission—as the order's drafter—can certainly shed some light. See generally Kisor v. Wilkie, 139 S. Ct. 2400, 2412 (2019) (noting the general logic that "[t]he drafters will know what [they wrote] was supposed to include or exclude or how it was supposed to apply to some

problem"). To the extent that Wirtgen challenges the statutory or constitutional authority of the Commission to exclude non-adjudicated articles more generally, the experience and longstanding practice of the Commission—and the Federal Circuit—in dealing with LEOs can "be brought to bear on" those claims. Jarkesy, 803 F.3d at 29 (internal quotation marks omitted); see, e.g., Laerdal Med. Corp. v. Int'l Trade Comm'n, 910 F.3d 1207, 1214 (Fed. Cir. 2018) ("Our interpretation is also supported by the Commission's own prior application of the statute."); Suprema, 796 F.3d at 1352 ("recognizing the Commission's technical expertise in deciding issues arising under Section 337, a statute Congress has entrusted the agency to administer").

B. The Customs / Court of International Trade Roadway

Wirtgen counters that it is not challenging the Commission's exclusion order, but *Customs's* application of it. Wirtgen's claims rest on its contention that the LEO at issue does not, on its face, encompass the Redesigned 1810 Series machines. As noted, the LEO prohibits Wirtgen from importing "[r]oad construction machines and components thereof *that infringe* claim 19 of the '693 patent." LEO at 2 (emphasis added). Wirtgen maintains that "that infringe" *must* mean "that the Commission has found to infringe." Pl. Opp. to MTD 18. Because the Commission had deemed the Redesigned 1810 Series machines outside its original investigation, Wirtgen claims, the LEO could not encompass those machines. To Wirtgen, in other words, it is as if the exclusion order prohibited the importation of "apples," but Customs excluded oranges.

The Court doubts that the LEO *clearly* omits the redesigned machines. After all, articles "that infringe" could also mean articles "that in fact infringe," but have not yet been imported or found to infringe.[11] Such a reading would hew to the remedial objective of an exclusion order.

---

[11] Although the Court of International Trade rejected "the Commission's argument that the Limited Exclusion Order *must* be interpreted to exclude the Redesigned 1810 Series

See, e.g., Suprema, 796 F.3d at 1349 ("[L]ike all forms of injunctive relief, an exclusion order prevents *future* illegal acts from occurring by, for example, preventing *similar* articles from entering the U.S." (emphasis added)). It would also be consistent with how the Commission has proceeded in this case—by advising Customs prior to the exclusions at issue that it was Wirtgen's burden, as the adjudged infringer, "to demonstrate that similar articles, *such as redesigned articles*, do not infringe," Dec. 12 Letter at 2 (emphasis added), and by instituting a modification proceeding "as to whether the Commission shall modify the remedial orders to *explicitly exempt* Wirtgen redesigned series 1810 machines," Defs. First Notice of Orders Docketed in Related Matters, ECF No. 38, Exh. 2 at 1 (emphasis added). This approach indicates the Commission's understanding that the redesigned machines were included in the LEO as written.

In any case, the Court need not decide the meaning of the LEO because, even accepting Wirtgen's characterization of its claims—*i.e.*, that the LEO prohibited the importation of "apples" and Customs excluded oranges—Congress intended they proceed through an alternative statutory scheme. That scheme consists of an administrative protest before Customs with review by the Court of International Trade.

Congress's intent that this scheme be the exclusive forum for challenging exclusion decisions by Customs is "fairly discernible in the statutory scheme." Thunder Basin, 510 U.S. at

---

machines," it did not hold that the LEO *must* be interpreted not to exclude them. CIT Op. 19 (emphasis added). Congress likely intended that any ambiguity in an LEO be resolved by the Commission and the Federal Circuit rather than by Customs and the Court of International Trade. See generally Kisor, 139 S. Ct. at 2412 (noting the general logic that "[t]he drafters will know what [they wrote] was supposed to include or exclude or how it was supposed to apply to some problem").

207.  Like the statute at issue in <u>Thunder Basin</u>, the Tariff Act establishes "a detailed structure for reviewing" CBP's exclusion decisions, <u>id.</u>:

> decisions of the Customs Service . . . as to the exclusion of merchandise from entry . . . under any provision of the customs laws, *except a determination appealable under section 1337 of this title* shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest . . . is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514(a)(4) (emphasis added).[12]  Congress specified that "[t]he Court of International Trade shall have *exclusive* jurisdiction of any civil action commenced to contest the denial of a protest . . . ," 28 U.S.C. § 1581(a), and that "[t]he district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade . . . ," <u>id.</u> § 1337(c).

As mentioned, Wirtgen filed a protest with Customs challenging the exclusion of its redesigned machines.  Customs concluded that it lacked jurisdiction to hear Wirtgen's protest because it challenged a "determination appealable under section 1337" within the meaning of 19 U.S.C. § 1514(a).  Protest Denial 1–2, 12–24.  The Court of International Trade disagreed.  It held that a "claim[] that Customs excluded merchandise to which the LEO did not apply" was not appealable under § 1337(d), which it interpreted to encompass only "claim[s] that [a] Limited Exclusion Order is unlawful."  CIT Op. 10–11.  The CIT thus concluded that it had jurisdiction under 28 U.S.C. § 1581(a) to review Wirtgen's claim that Customs unlawfully detained the redesigned machines.

---

[12] CIT decisions may be appealed to the Federal Circuit.  <u>See</u> 28 U.S.C. § 2645(c).

The Court pauses to consider 19 U.S.C. § 1514(a)(4).  In the Court's view, it is not entirely clear from the statute what phrase the clause, "except a determination appealable under section 1337 of this title," modifies.  One way to parse the statute is that the clause modifies "decisions of the Customs Service . . ."  That appears to be the CIT's interpretation.  See, e.g., CIT Op. 10 ("The question as to jurisdiction . . . is whether the decisions made [by Customs] . . . to exclude the six Redesigned 1810 Series machines from entry were 'determinations' that were 'appealable' under section 337.").

The problem with this reading, with all due respect to the CIT, is that no "decision[] *of the Customs Service*" is ever appealable under Section 337.  19 U.S.C. § 1514(a) (emphasis added).  Section 337 only makes "final determination[s] *of the Commission* under subsection (d), (e), (f), or (g)" appealable to the Federal Circuit.  19 U.S.C. § 1337(c) (emphasis added); see also 28 U.S.C. § 1295(a)(6) ("[T]he Federal Circuit shall have exclusive jurisdiction to review the final determinations *of the United States International Trade Commission* relating to unfair practices in import trade, made under section 337 . . ." (emphasis added)).  It would be incoherent to read "determination appealable under section 1337" to refer a decision *by Customs* to exclude articles from entry if no such "determination" is ever "appealable under section 1337."  19 U.S.C. § 1514(a)(4); see generally Indep. Ins. Agents of Am., Inc. v. Hawke, 211 F.3d 638, 644 (D.C. Cir. 2000) ("[A]ll words in a statute are to be assigned meaning, and . . . nothing therein is to be construed as surplusage." (internal quotation marks omitted)).

The more plausible reading, in the Court's view, is that the clause, "except a determination appealable under section 1337 of this title," modifies "under any provision of the customs laws."  The statute would parse: "decisions of the Customs Service as to the exclusion of merchandise from entry . . . under any provision of the customs laws, except [under] a

determination appealable under section 1337 of this title shall be final and conclusive . . ." 19

U.S.C. § 1514(a)(4). As explained, Customs lacks the authority to make any "determination"

that is "appealable under section 1337"; the statute tasks the *Commission* with making

"determination[s]" as to "whether or not there is a violation of this section" and tasks Customs

only with "refusing such entry" as ordered by the Commission. Id. § 1337(c), (d)(1), (e)(1).

The upshot of the Court's reading would be that exclusion decisions by Customs made

pursuant to the *Commission's* determination of a Section 337 violation, *i.e.*, an exclusion order,

may not be the subject of an administrative protest before Customs. That would be consistent

with Congress's intent that the ITC and the Federal Circuit have exclusive jurisdiction to

adjudicate challenges to Section 337 determinations. See, e.g., 28 U.S.C. § 1295(a)(6) ("[T]he

Federal Circuit shall have exclusive jurisdiction to review the final determinations of the United

States International Trade Commission relating to unfair practices in import trade, made under

section 337 . . . .").[13]

In any case, the Court need not decide whether Wirtgen's claims fall within the

"determination appealable under section 1337 of this title" carve-out in 19 U.S.C. § 1514(a)(4).

---

[13] The statutory history supports this view. In the Customs Court Act of 1980, Congress simultaneously made two relevant amendments. First, it gave the predecessor to the Federal Circuit "jurisdiction to review the final determinations *of the United States International Trade Commission* made under section 337 of the Tariff Act of 1930 . . . relating to unfair trade practices in import trade." Pub. L. 96-417, 94 Stat. 1727, 1740 (Oct. 10, 1980) (emphasis added). Second, it amended 19 U.S.C. § 1514(a)(4) to read: "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, *except a determination appealable under section 337 of this Act*." Id. at 1,744 (emphasis added). "The Congress that enacted both of these . . . schemes knew well," Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2072 (2018), that only determinations *of the Commission* are "appealable under section 337," 94 Stat. at 1740. The only way to reconcile these two amendments is that Congress intended for parties aggrieved by a Commission determination under Section 337, carried out through an exclusion by Customs, to take up their objection with the Commission and the ITC.

The Court's holding today is simply this: If Wirtgen's claims fall within that carve-out, Congress intended that they be adjudicated exclusively by the ITC and the Federal Circuit. If Wirtgen's claims do not fall within that carve-out, Congress intended that they be adjudicated exclusively by Customs and the Court of International Trade. Indeed, the CIT has confirmed that is ready to entertain Wirtgen's claim that Customs wrongfully excluded the six redesigned machines "without an underlying directive from the Commission." CIT Op. 13.

As with the Commission / Federal Circuit roadway, Wirtgen does not contest the exclusivity of the CIT's jurisdiction to review Customs's denial of its protest. It tries instead to distinguish the claims that it brings in this Court from those raised in the CIT. According to Wirtgen, "the CIT action raises claims that Customs acted unlawfully in denying Wirtgen's protests directed to the six excluded machines and . . . seeks *retrospective* relief directed specifically to those machines"; by contrast, this suit "raises claims that Customs' ongoing procedures for enforcing LEOs are unlawful and unconstitutional and . . . seeks *prospective* relief that would prevent Customs from using those procedures to exclude or seize any Wirtgen machines in the future." Pl. Opp. to MTD 11 (emphasis in original); see also Pl. Notice of Orders Docketed in Related Matters, ECF No. 41, at 1 n.1. Even assuming that Wirtgen would have standing to seek prospective relief separate from Customs's exclusion of its particular machines, Wirtgen has not shown that its claims in this Court "fall outside of the scope of [this] special statutory scheme." Arch Coal, 888 F.3d at 500.

*First,* "a finding of preclusion [w]ould [not] foreclose all meaningful judicial review." Thunder Basin, 510 U.S. at 212–13. The CIT is an Article III court with full jurisdiction to consider Wirtgen's claims, regardless of whether they were—or could have been—raised in the

underlying administrative protest.[14] See 28 U.S.C. § 2638 (permitting the CIT to "consider any ground in support of [a] civil action" "in which the denial . . . of a protest is a precondition to the commencement of [the] action" "if such new ground (1) applies to the same merchandise that was the subject of the protest; and (2) is related to the same administrative decision listed in section 514 of the Tariff Act of 1930 that was contested in the protest"); see also Ct. Int'l Trade R. 8(b) (same). Wirtgen has not explained why it could not raise the challenges that it has brought in this Court in the CIT action.[15]

*Second*, Wirtgen's claims are not "wholly collateral to [the] statute's review provision." Thunder Basin, 510 U.S. at 212 (internal quotation marks omitted). The fact that Wirtgen frames its "constitutional and APA claims" as challenging Customs's general practice of applying LEOs to unadjudicated articles does not mean that those claims "arise 'outside' . . . the administrative enforcement scheme." Jarkesy, 803 F.3d at 23 (quoting Elgin v. Dep't of Treasury, 567 U.S. 1, 22 (2012)). Despite Wirtgen's artful pleading, it "seeks the same relief" in this Court that it "could seek"—and indeed has sought—"in the agency proceeding." Id.; see, e.g., Compl. Prayer

---

[14] As noted, Customs denied Wirtgen's protest based on its conclusion that it lacked jurisdiction because the determination that Wirtgen was challenging was one "appealable under section 1337 of this title." Protest Denial 1–2 (quoting 19 U.S.C. § 1514(a)(4)). Nothing in the structure of the Tariff Act suggests that review of Customs's denial of a protest based on jurisdictional grounds is not committed to the exclusive jurisdiction of the CIT. Indeed, the Supreme Court has warned against "a jurisdictional rule based on the nature of a[] [litigant's] constitutional claim." Elgin, 567 U.S. at 15.

[15] Wirtgen invokes Free Enterprise Fund, but that case involved a *pre*-enforcement challenge to the constitutionality of the organic statute, where the Supreme Court emphasized that requiring plaintiffs to manufacture a dispute or "bet the farm by taking the violative action before testing the validity of the law" were not "meaningful[s] avenue of relief." Free Enter. Fund, 561 U.S. at 492 (internal quotation marks omitted). Here, by contrast, Wirtgen "is already properly before [Customs] by virtue of his alleged violations of [Section 337]," and "should [Customs's] final order run against him," as it has here, the CIT "is available to hear those challenges." Jarkesy, 803 F.3d at 25.

for Relief ¶ A.3, <u>Wirtgen America, Inc. v. United States</u>, No. 20-cv-27 (Ct. Int'l Trade Jan. 30, 2020) (seeking an order from CIT declaring that "Defendants' detention and exclusion of the Redesigned 1810 series machines was wrongful and contrary to the law because the Commission did not determine that those machines infringe claim 19 of the '693 patent"); <u>id.</u>, Exh. E at 23 (arguing in its protest to Customs that "[t]he exclusion order clearly includes only machines found to infringe, and an interpretation extending it to unadjudicated machines would be both unreasonable and unlawful—allowing Customs and the Commission to effectively issue a new exclusion order every time it interprets the existing exclusion order"); Pl. Mot. for Summ. J. at 1, <u>Wirtgen America, Inc. v. United States</u>, No. 20-cv-27 (Ct. Int'l Trade Feb. 24, 2020) (challenging "Customs' unsupported and overbroad interpretation of a Limited Exclusion Order (LEO) issued by the U.S. International Trade Commission"); <u>id.</u> at 4 (arguing that "Customs' interpretation of the LEO . . . contradicts the Commission's own statements regarding the scope of its LEOs").

Wirtgen's Appointments Clause claim does not change the analysis. <u>See</u> Compl. ¶¶ 310–403. Even if Customs lacked the authority to consider such a challenge in the first instance, "so long as a court can eventually pass upon the challenge, limits on an agency's own ability to make definitive pronouncements about a statute's constitutionality do not preclude requiring the challenge to go through the administrative route." <u>Jarkesy</u>, 803 F.3d at 18. Wirtgen is thus obligated to raise its Appointments Clause challenge in tandem with its claims in the CIT action. <u>See, e.g.</u>, <u>Hill v. SEC</u>, 825 F.3d 1236, 1252 (11th Cir. 2016) (holding that "challenges to the constitutionality of the SEC ALJs" were not "outside the type of claims that Congress intended to be reviewed within this statutory scheme").

*Finally,* Wirtgen's claims are not "outside the agency's expertise." Thunder Basin, 510 U.S. at 212.  Although Wirtgen frames its complaint as raising "standard questions of administrative law," Free Enterprise did not announce a blanket rule that all administrative law questions are "outside the [agency's] competence and expertise." Free Enterprise, 561 U.S. at 491; see Jarkesy, 803 F.3d at 28.  Given that Wirtgen is challenging Customs's interpretation of an LEO, the experience of Customs—and the CIT—in interpreting LEOs can certainly be brought to bear on Wirtgen's claims.[16]  See, e.g., One World Techs., Inc. v. United States, 357 F. Supp. 3d 1278, 1282 (Ct. Int'l Trade 2018) (adjudicating Plaintiff's claim that Customs should not have denied its protest because its redesigned products were "not included in the scope of the Limited Exclusion Order" issued by the ITC under Section 337); Corning Gilbert Inc. v. United States, 896 F. Supp. 2d 1281, 1283 (Ct. Int'l Trade 2013) (adjudicating Plaintiff's challenge to Customs's exclusion of Plaintiff's merchandise based on a general exclusion order issued by the ITC pursuant to Section 337).[17]

---

[16] Elgin noted, for example, that "the challenged statute may be one that the [agency] regularly construes, and its statutory interpretation could alleviate constitutional concerns." 567 U.S. at 23; see also Mitchell v. Christopher, 996 F.2d 375, 379 (D.C. Cir. 1993) ("[T]here are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the agency's statutory construction.").  Notably, the phrase at issue in the LEO, see LEO at 2 (prohibiting the importation of "[r]oad construction machines and components thereof *that infringe* claim 19 of the '693 patent" (emphasis added)), is identical to the language in Section 337, see 19 U.S.C. § 1337(a)(1)(B)(i) (prohibiting "[t]he importation into the United States . . . of articles *that infringe* a valid and enforceable United States patent (emphasis added)).

[17] In both OneWorld and Corning Gilbert, the plaintiffs had requested an administrative ruling from Customs as to whether the products at issue were covered by the exclusion order, which required the Intellectual Property Rights Branch of Customs to make its own infringement determination.  See OneWorld, 357 F. Supp. 3d at 1285; Corning Gilbert, 896 F. Supp. 2d at 1283.  Wirtgen did not do so here.

**IV. Conclusion**

Whichever road Congress paved for Wirtgen to challenge the exclusion of its Redesigned 1810 Series machines, neither goes through federal district court. The Court will, accordingly, dismiss this case for lack of subject-matter jurisdiction and deny Wirtgen's motion for injunctive relief. A separate order will follow.

Date: <u>March 12, 2020</u>

_____
CHRISTOPHER R. COOPER
United States District Judge